2001 ME 2

**Michael L. YATES**

v.

**TOWN OF SOUTHWEST HARBOR.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 2000.

Decided Jan. 5, 2001.

Thomas B. Federle (orally), Clifford H. Goodall, Dyer Goodall and Federle LLC, Augusta, for plaintiff.

Roger L. Huber (orally), Glen L. Porter, Eaton, Peabody, Bradford & Veague, P.A., Bangor, for defendant, John & Melvin Spofford.

Chadbourn H. Smith, Fenton, Chapman, Smith & Kane, P.A., Bar Harbor, for defendant, Town of S.W. Harbor.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Michael Yates appeals from the judgment entered in the Superior Court (Hancock County, *Marsano, J.*) affirming the decision of the Southwest Harbor Zoning Board of Appeals granting John Spofford's administrative appeal from the Southwest Harbor Planning Board's denial of his application for a Flood Hazard Development Permit. Yates, an abutter, argues that the Superior Court erred in affirming the decision of the ZBA because the Planning Board did not err when it denied Spofford's application. We agree and vacate the judgment of the Superior Court.

[¶ 2] Spofford operates a boat engine repair business in a building located on a pier in Southwest Harbor. Yates owns property immediately adjacent to Spofford's property on which he operates a marine electronics sales and repair business. In February of 1995, Spofford applied for a Land Use Ordinance Permit to "[r]eplace a 35′ X 36′ piece of the dock and building of which is now 72′ X 60′." As an abutter, Yates received notice that the Planning Board was considering Spofford's application, but he did not attend the first public hearing regarding the application.[1]

[¶ 3] In support of this application, Spofford was required to obtain a Flood Hazard Development Permit from the Planning Board. Under the town's Floodplain Management Ordinance, if an improvement made to an existing structure is "substantial," the structure must be located at least one foot above the base flood elevation or it must be flood-proofed to at least one foot above the base flood elevation. Southwest Harbor, Me., Floodplain Management Ordinance for the Town of Southwest Harbor § IV(H) (May 7, 1991). The elevation of Spofford's building is two and one-half feet below the required elevation. Spofford maintained before the Planning Board, however, that he would not have to comply with the elevation requirements because the improvements he planned to make were not "substantial." A "substantial improvement" is "any reconstruction, rehabilitation, addition or other improvement of a structure, the cost of which equals or exceeds 50% of the market value of the structure before the 'start of construction' of the improvement." Floodplain Management Ordinance § XII. Because Spofford's building is located on a pier, the Maine Flood Insurance Coordinator contacted the Federal Emergency Management Agency (FEMA) to determine whether the pier should be considered part of the building for purposes of determining its market value. In response, the Director of FEMA's Mitigation Division explained that "[i]t is a reasonable

---

1. Yates explains that he did not attend the Planning Board's first meeting because the notice he received described the improvements as a "replacement" of the existing building, not as an expansion of its elevation and footprint. Spofford's original application proposed an increase in the height of the existing building from twelve to eighteen and one-half feet. At its first meeting, however, the Planning Board approved Spofford's request to increase the height to twenty-five feet. Yates maintains that this increased height restricts his horizon and interferes with his ability to test, evaluate, and demonstrate radar and satellite receivers.

approach to include the value of the dock/piers beneath the footprint of the building in determining the market value of the building."

[¶ 4] In support of his application, Spofford provided an estimate that the improvements would cost $19,887.60 and a real estate agent's assessment that the market value of the structure and the entire pier is $93,000. Based on these figures, the Planning Board determined that Spofford's proposed improvements were not "substantial" and approved his application.

[¶ 5] After Spofford had completed construction, Southwest Harbor's Code Enforcement Officer (CEO), Larry Gardner, reviewed the Spofford property and found that, as built, it did not comply with the building specifications of the permit issued. He explained that Spofford had violated the town's Land Use Ordinance in thirteen ways.[2] Most notably, the improved structure had a second floor that was not shown on the plans that accompanied the original application. The CEO informed Spofford that he would have to modify his permit to reflect the improvements as built. Spofford complied by filing an after-the-fact permit application.

[¶ 6] During the review process, the Planning Board re-examined its earlier decision regarding whether the project constituted a "substantial improvement." It noted that the original market value appraisal had been based upon an overstatement of the size of the building.[3] In addition, the CEO received a letter from the Maine Flood Insurance Coordinator expressing his concern that the Planning Board had acted contrary to FEMA's advice when it included the value of the entire pier in its assessment of the market value of Spofford's building. The Coordinator pointed out that FEMA's advice had been to include only the value of the pier beneath the structure's footprint when determining the structure's value. He emphasized that compliance with the Floodplain Management Ordinance is a condition of the town's participation in the National Flood Insurance Program. He also explained to the CEO that an opinion of the market value of a structure must come from a real estate appraiser, not a real estate agent.

[¶ 7] After review, the Planning Board denied Spofford's after-the-fact application for a Flood Hazard Development Permit. The Planning Board specifically found that the value of the building and the portion of the pier immediately under it, prior to the

2. The CEO enumerated the violations as follows:
   1. Not having Submerged Lands Lease for pier extension and new floats.
   2. Not having DEP Long Form Permit for an "EXPANSION."
   3. Misleading information on application.
   4. Misleading information on site plan.
   5. Misleading information on elevation drawing of building.
   6. Not having Harbor Committee review/approval of 2' pier extension.
   7. Not having Harbor Committee review/approval of expansion of shop's dock coverage, floor area, height and volume.
   8. Not having Army Corps approval for pier extension.
   9. Being indeed a substantial improvement in regards to flood hazard review.
   10. Applicant listed "marina" as a proposed use. This must be officially dispelled. The Planning Board did not review and approve this site as a marina.
   11. Not having Planning Board approval for shop relocation, reconstruction, replacement and expansion of the 1st floor level from 1132 sq. ft. to 1400 sq. ft.
   12. Not having Planning Board approval for expansion of volume and floor area of the 2nd level.
   13. Not having Planning Board approval for the Morris Yachts use of the property.

3. Town Planner, Jean Marshall, explained:

   The estimate of market value for this Flood Hazard Application was prepared by Knowles Real Estate. The letter says that the structure contains approximately 1800 sq. ft.—approximately 720 sq. ft. has been recently renovated with the remaining 1080 sq. ft. in poor to fair condition. From the above research, the recently renovated building contained only 616 sq. ft. and the rest of the old building contained 619 sq. ft., for a total of *1235 sq. ft. only*.

replacement and expansion, was $45,762. It also found, based on paid invoices for completed work, that the cost of the improvements was $27,259.45. It concluded that the improvements had been "substantial" and, because Spofford's structure did not conform with the Floodplain Management Ordinance's elevation requirements, it denied his application.

[¶ 8] Spofford appealed to the Zoning Board of Appeals (ZBA) for a variance. At the hearing, the ZBA accepted the appeal application with exhibits, letters from FEMA, a letter from the Planning Board Chairman, letters from Spofford's attorney, and a letter from Yates. Members of the Planning Board made appearances and the CEO and Yates's daughter made presentations. After the presentations, the ZBA closed the public hearing and began deliberations. It decided to treat Spofford's appeal as an administrative appeal rather than a request for a variance. It determined that the Planning Board had issued a valid building permit based on the original assessment of the building's value at $93,000 and that the actual cost of the improvements, $27,259.45, was less than 50% of that value. It concluded, therefore, that the improvements were not substantial and that the Planning Board could not "impose undue financial hardship by changing the rules" after Spofford had "expended his money consistent with the original assessment." Accordingly, the ZBA directed the Planning Board to reissue the permits. It later reconsidered the appeal but upheld its previous decision.

[¶ 9] Yates subsequently filed a four-count complaint for review of governmental action, pursuant to M.R. Civ. P. 80B, and independent relief. The Superior Court stayed the claims for independent relief pending the resolution of the 80B claims. It later denied the 80B claims and Yates appealed. We, however, remanded the matter to the Superior Court because no final judgment had been entered on the independent claims. The parties subsequently agreed to dismiss the independent claims with prejudice and Yates brought the present appeal.

[¶ 10] When the Superior Court acts as an appellate court, we review directly the operative decision of the municipality, *Stewart v. Town of Sedgwick,* 2000 ME 157, ¶ 4, 757 A.2d 773, 775, for "error of law, abuse of discretion or findings not supported by substantial evidence in the record," *Sproul v. Town of Boothbay Harbor,* 2000 ME 30, ¶ 8, 746 A.2d 368, 372 (internal quotations omitted). In identifying the operative decision for purposes of review, we have noted that:

> If the Board of Appeals acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly. If, however, the Board acted only in an appellate capacity, we review directly the decision of the Planning Board, or other previous tribunal, not the Board of Appeals.

*Stewart,* 2000 ME 157, ¶ 4, 757 A.2d at 775 (citations omitted). Yates argues that Southwest Harbor's ZBA was acting in its appellate capacity when it granted Spofford's administrative appeal and, therefore, we ought to review the Planning Board's decision directly. Spofford, on the other hand, maintains that the ZBA acted as a tribunal of original jurisdiction, not as a purely appellate body, when it granted Spofford's appeal. Although he does not challenge the Planning Board's decision itself, he maintains that we should review the ZBA's decision directly and that its decision is not in error.

[¶ 11] In order to determine the ZBA's role in these proceedings, we look to state statutes and to the municipality's own ordinances. *See id.* at ¶ 6, 757 A.2d at 775. In *Stewart v. Town of Sedgwick,* for example, we reviewed the statute authorizing municipalities to establish boards of appeal, 30–A M.R.S.A. § 261(3)(D) (1996), and Sedgwick's zoning ordinance. *Id.* ¶ 6, ¶ 11, 757 A.2d at 775–77. We first explained that section 261(3)(D) requires boards of appeal to conduct hearings de novo, unless the municipal ordinance explicitly directs oth-

erwise. *Id.* ¶ 7, 757 A.2d at 776. Sedgwick's ordinance, however, did not do so. *Id.* ¶ 11, 757 A.2d at 777. It implied that its Board of Appeals was to act as an appellate body by providing that it may "reverse the decision ... of the Code Enforcement Officer or Planning Board only upon a finding that the decision ... was clearly contrary to specific provisions of this Ordinance." *Id.* at n. 5 (quoting Sedgwick zoning ordinance) (omissions in original). It also suggested, however, that the Board of Appeals was to undertake a de novo review of the matter by providing "[t]he person filing the appeal shall have the burden of proof" and "[a]ll decisions shall ... include a statement of findings and conclusions...." *Id.* at n. 6 (quoting Sedgwick zoning ordinance) (omissions in original).

[¶ 12] Like the Sedgwick zoning ordinance, Southwest Harbor's Board of Appeals Ordinance provides that the ZBA may "reverse the decision of the Code Enforcement Officer or Planning Board ... only upon finding that the decision, or failure to act, was clearly contrary to specific provisions of the ordinance in question or unsupported by substantial evidence in the record." Southwest Harbor, Me., Board of Appeals Ordinance for the Town of Southwest Harbor § X (E) (May 8, 1990). It also provides that "[a]ll decisions ... must include a statement of Findings of Fact and Conclusions, upon all the material issues of fact, law or discretion presented." *Id.* § X(B). Finally, the town's Land Use Ordinance provides that "[t]he person filing the appeal shall have the burden of proof." Southwest Harbor Land Use Ordinance § VIII(C)(3) (June 29, 1992).

[¶ 13] Unlike the Sedgwick zoning ordinance, however, Southwest Harbor's Land Use Ordinance gives the ZBA specific authority to act as an appellate body. Under the ordinance, the ZBA may hear administrative appeals, variance appeals, and appeals to extend the life of a building permit. Land Use Ordinance § VIII(B).

The authority to hear administrative appeals allows the ZBA "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement, decision, or determination made by, or failure to act by, the Code Enforcement Officer or Planning Board in the administration of this Ordinance." § VIII(B)(1). The ZBA's authority to act on an administrative appeal, therefore, is limited to reviewing decisions made by the CEO or Planning Board. In order to exercise its authority to grant variances or extend the life of building permits, by contrast, the ZBA is required to make independent factual findings of "undue hardship" (in the case of variances) or "progress" (in the case of building permit extensions). Land Use Ordinance § VIII(B)(2–3).

[¶ 14] We conclude that Southwest Harbor's ZBA acted as an appellate body when it conducted the present administrative appeal. Although it conducted a public hearing and took evidence on Spofford's variance appeal, it closed the hearing before deciding to treat the appeal as an administrative appeal. Its conclusions, though labeled "findings of fact," dealt only with the propriety of the Planning Board's actions. The ZBA made no independent factual determination of the value of Spofford's property or the costs of the improvements. Rather, it determined that the Planning Board had erred by "changing the rules" when it re-evaluated Spofford's project.

[¶ 15] Because Southwest Harbor's ZBA acted in its appellate capacity in granting Spofford's administrative appeal, we review the decision of the Planning Board directly. *Stewart*, 2000 ME 157, ¶ 4, 757 A.2d at 775. Spofford does not explicitly challenge the Planning Board's decision, and our review of the record reveals no error.

The entry is:

The judgment of the Superior Court is vacated. Remanded to the Superior Court for the entry of an order vacating the

judgment of the Zoning Board of Appeals and affirming the judgment of the Planning Board.