STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-02-26

FILED & ENTERED
SUPERIOR COURT

JUN 10 2003

PENOBSCOT COUNTY

Inhabitants of the Town of Levant,
            Appellant

v.

Order on Appeal

DONALD L. GARBRECHT
LAW LIBRARY

JUN 16 2003

Laurie Mullen Seymour,
            Appellee

Pursuant to 30-A M.R.S.A. § 2691(3)(G), TOWN OF LEVANT, MAINE BOARD OF APPEALS ORDINANCE § 7 (Board of Appeals Ordinance) and M.R.Civ.P. 80B, the Inhabitants of the Town of Levant (the Town) appeal from a decision of the Town's Board of Appeals (the board) vacating two stop work orders issued by the Town's code enforcement officer and enjoining Laurie Mullen Seymour from removing loam from land she owns in Levant. On this appeal, the Town argues that the Board did not have jurisdiction to review the stop work orders and, alternatively, that the CEO's decisions to issue the stop work orders were supported by the evidence and not otherwise affected by error. The court has considered the parties' submissions and arguments on this appeal.[1]

Seymour is the record owner of the subject parcel of land in Levant. The property is bisected by the Tay Road, and is segregated into several lots for purposes of municipal taxes because Seymour had created a subdivision within the bounds of her land.[2] Nonetheless, all of the subject premises are included within a single deed description. In

---

[1] The court reminds Seymour's counsel of the provisions of M.R.Civ.P. 7(f), which provides that submissions must be double-spaced.

[2] Lot 8 is south of the Tay Road, and lots 2, 2-1, 2-2 and 2-3 are north of the road. *See* R. 12, 13.

1

1991, Seymour applied for and was granted a permit to remove loam from parcels 2-1, 2-2 and 2-3. R. 17 (permit application); R. 18-20 (land use permits for the three parcels); R. 28 (minutes of Planning Board meeting where Seymour proposed an adjustment to the subdivision in light of her plans to extract the loam from the affected parcels). The removal of loam is governed by the Town's land use ordinance. *See* TOWN OF LEVANT, MAINE, LAND USE ORDINANCE § 1220 (Land Use Ordinance) (R. 1). Seymour then proceeded with the process of removing loam from the parcels.

On June 26, 2002, the Town's code enforcement officer issued a stop work order to Seymour. R. 8. In the order, the CEO found that Seymour had exceeded three of the restrictions created by the ordinance: first, that she had removed more than 1,000 cubic yards of material without first obtaining Planning Board approval; second, that she had removed material below the seasonal high water table[3]; and finally that she had removed material within 150 feet of a property line. *See* Land Use Ordinance (R. 1) at §§ 1220(C), (D)(6). Seymour filed an appeal from this order on July 9. R. 3. Three days later, the CEO issued a second stop work order, this one based on his finding that Seymour removed material below road level and within 150 of that road. *See* Land Use Ordinance (R. 1) at § 1220(D)(10). The Board considered Seymour's appeal at a meeting held on August 7, 2002. The parties agree here that the scope of the hearing included both stop work orders that the CEO had issued. By a vote of 3-1, with a fifth member abstaining, the Board concluded that the CEO has issued both stop work orders "without the CEO finding his facts before issuing them." On that basis, the Board vacated the orders. The Town appeals from that decision.

## A. Jurisdiction of the Board of Appeals

In its reply brief on this appeal, the Town argued that the Board did not have jurisdiction to entertain Seymour's appeal from the two stop work orders. Seymour was given leave to respond to that argument in a supplemental filing.

Title 30-A M.R.S.A. § 2691 authorizes municipalities to create boards of appeal. When such a board is established, the municipality is entitled to give that board

---

[3] At the hearing held before the Board, the CEO advised the Board that there was insufficient evidence to support that claim. He and the Town pressed the other grounds the led to the issuance of the stop work orders.

2

jurisdiction "to hear any appeal. . .from any decision, order, regulation or failure to act of any officer. . . ." However, once the board's jurisdictional parameters are promulgated, then the board is foreclosed from asserting "jurisdiction over any matter unless the municipality has by charter or ordinance specified the precise subject matter that may be appealed to the board and the official or officials whose action or nonaction may be appealed to the board." The Town's argument therefore calls for an examination of the Board's jurisdiction as established in the Town's ordinances. As with all ordinances, the court looks first to the plain language of an ordinance in order to construe it. *Banks v. Maine RSA # 1,* 1998 ME 272, ¶ 4, 721 A.2d 655, 657. "In doing so '[t]he terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole.'" *Id.* (citation omitted).

Section 1522 of the Town's Land Use Ordinance confers jurisdiction on the Board to "hear appeals from determinations of the. . .Code Enforcement Officer in the administration of this Ordinance." The ordinance goes on to provide that the Board is authorized to reverse the decision under review only upon a finding that "the decision is clearly contrary" to the terms of the ordinance.[4] A separate set of ordinances applies to the Board of Appeals' proceedings. R. 2. Section 4 of the Board of Appeals Ordinance provides that the Board has jurisdiction over "appeals from any decision, action, or failure to act by the following officials and in the following matters only: (a) by the Code Enforcement Officer. . .in the administration of. . .the Land Use Ordinance. . . ." Here, the Town argues that the Board did not have jurisdiction to entertain Seymour's appeal from the CEO's decision to issue stop work orders, because the orders are in the nature of enforcement rather than administration.

In support of this argument, the Town attempts to delineate between those functions where the CEO has authority to issue (or deny) permits under Article 1000 of the Land Use Ordinances (entitled "Permits Required"), and his responsibility to take

---

[4] Prior to 1997, section 1522 also provided that any aggrieved party may file an appeal "from *any decision* of the Code Enforcement Officer. . . ." (Emphasis added.) However, as is discussed below, section 1522 was repealed in 1997. Then, in 2000, the Town enacted a new version of section 1522 that includes part of the old formulation. However, the old language set out here was not included in the 2000 amendment.

3

action against apparent violations of the ordinances under Article 1400 (entitled "Enforcement"). The court concludes, however, that these categories of responsibility are not mutually exclusive. Steps that are taken to enforce compliance with the Town's land use ordinances are a mechanism to administer or apply those requirements. Thus, although some kinds of administrative actions are not in the nature of enforcement, the issuance of two stop work orders in this case must be seen as acts to administer the ordinances.

Further, it is worthy of note that neither Article 1000 nor Article 1400 contains any reference to appellate rights. If only one of those sections specifically noted rights of appeal from the CEO's decision, then there might be an inference that the omission of such a reference in the other section was intentional and that no such rights exist. That, however, is not the case.

Finally, the provision for municipal legal action in the event of a continuing violation under section 1420 by itself cannot be read to mean that the alleged violator does not have a right to appeal to the Board.

*Pepperman v. Town of Rangeley*, 659 A.2d 280 (Me. 1995) does not lead to a contrary conclusion. There, the Law Court concluded that the municipal board of appeals did not have appellate jurisdiction over the CEO's "enforcement" decisions, because under the applicable Town ordinances, any board consideration of appeals from those decisions was advisory only. *Id.* at 281-82. To the extent that it may be useful in this case, *Pepperman* holds that the issuance of a notice of violation is an enforcement action. However, it does not support the Town's core argument here, that an enforcement action is a distinct vehicle from an administrative action.

Therefore, the Town's ordinances create jurisdiction in its Board of Appeals for consideration of a stop work order issued by the municipal CEO, and the Board was authorized to consider Seymour's appeal.

### B. Standard of review

The next questions are whether the Board acted in an appellate or fact-finding capacity when it considered the merits of Seymour's appeal, and whether the nature of the Board's assessment was proper in light of the applicable law. The answers to these questions establish whether this court would review the decision of the CEO to issue the

4

stop work orders, or whether it would review the Board's decision to vacate those orders. *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773, 775. Not surprisingly, the Town contends that the operative decisions were the CEO's issuance of the two stop work orders, and Seymour contends that the decision that was favorable to her, namely, the Board's decision to vacate the stop work orders, should be the subject of review here. Because those lower decisions were contrary to each other, the answer to this question would be of profound significance to the outcome of this court proceeding.

In the circumstances of this case, this issue is an intriguing one. As is discussed below, there are procedural aspects of the lower proceedings and of the controlling law (both statute and ordinances) on which the parties legitimately base their arguments. In determining the proper function of a municipal board of appeals, a court must consider both the laws that control the administrative proceedings and the nature of the actual proceedings at issue. *See generally Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶¶ 11-14, 763 A.2d 1168, 1171-72; *Salisbury v. Town of Bar Harbor*, AP-99-35 at 13, n.6 (Superior Court, Hancock County, Jan. 23, 2001), *aff'd on other grounds*, 2002 ME 13, 788 A.2d 598.[5]

The court begins the legislative analysis with state statutes. Title 30-A M.R.S.A. § 2691 establishes hearing procedures that a municipal board of appeals must follow. These procedures are characteristic of a fact-finding entity because, for example, they create a forum for the presentation of oral and documentary evidence; they establish the board's authority to exclude evidence; they ensure an opportunity for cross-examination of witnesses; and they require that the board issue a decision that includes a statement of findings and conclusions. As an alternative to this de novo fact-finding process, a municipality may create an appellate role for a board. Because of the existence of section 2691, however, any ordinance establishing the appellate function of the board must do so in "explicit" terms. *Stewart*, 2000 ME 157, ¶ 7, 757 A.2d at 776. This, then, requires an examination of the Town's ordinances that apply to proceedings before the board.

Unfortunately, to put it charitably, the pertinent ordinances are problematic. The Town's land use ordinance was enacted in June 1996. R. 1. Article 1500 created the

---

[5] The opinion in *Salisbury*, which was issued by this court, is included as an exhibit to Seymour's brief on this appeal.

Town's Board of Appeals. Section 1522 authorized the Board to adjudicate "appeals from determinations of the Planning Board or Code Enforcement Officer. . . ." The Board was given the power to "reverse the decision of the Planning Board or Code Enforcement Officer only upon a finding that the decision is clearly contrary to specific provisions of this Ordinance."

On year later, in June 1997, the Town enacted a separate ordinance, namely, the Board of Appeals Ordinance. R. 2. Under section 8 of the Board of Appeals Ordinance, "Any ordinance enacted or legislative act prior hereto and establishing or purporting to establish a Board of Appeals by that or another name, or governing or purporting to govern its membership, authority or procedure, is hereby repealed." This had the effect of repealing Article 1500 of the Land Use Ordinance. Section 8 of the Board of Appeal Ordinance goes on to provide that the intended effect of the ordinance is to create a Board of Appeals that is governed by 30-A M.R.S.A. § 4353.[6] However, by its own terms, section 4353 was created to apply to those municipalities that adopted a "zoning ordinance." A "zoning ordinance" is "a type of land use ordinance that divides a municipality into districts and that prescribes and reasonably applies different regulations in each district." 30-A M.R.S.A. § 4301(15-A). The Town of Levant does not have zoning districts. Thus, section 4353 may not be applicable to the Town in the first place.[7]

Nonetheless, the Board of Appeals Ordinance created a procedure that, although described as an "appeal," contains many of the ingredients found in 30-A M.R.S.A. § 2691, including the presentation of oral and documentary evidence, exclusion of evidence, cross-examination of witnesses, rebuttal evidence, use of exhibits, and written findings and conclusions issued by the board. Board of Appeals Ordinance, § 5. As with section 2691, this process has the hallmarks of a de novo fact-finding process. Because of the substantive framework of that process, the denomination of this process as an "appeal" certainly would not bring it within *Stewart*'s requirement that any provision for

---

[6] This would allow the Board to entertain requests for variances, *see* 30-A M.R.S.A. § 4353(4), which had been part of the Board's jurisdiction under Article 1500 of the Land Use Ordinance.

[7] This in turn may raise the question of whether the Board has authority to consider requests for variances. However, this issue is not presented here.

an appellate function must be "explicit." In other words, at this stage of the legislative analysis, the Board's hearings would not be appellate in nature.

The matter becomes complicated by the subsequent passage of an ordinance in June 2000, which purported to repeal and then amend section 1522 of the Land Use Ordinance. However, section 1522 – and Article 1500 as a whole – already had been repealed in 1997, when the Board of Appeals Ordinance was enacted. The putative amendment to section 1522 added one phrase to a portion of the old formulation of section 1522; that new phrase is underscored here: "Such hearings shall be held in accordance with State Laws, and the Board's deliberations and decisions limited to appellate review." This raises the question, not addressed by the parties here, of whether a legislative body may amend a law that previously had been repealed. Neither party has challenged the validity of the process that resulted in the ostensible enactment of section 1522 in 2000, and similarly neither party has challenged the authority of the Town to legislate the terms embodied in that provision. Consequently, the only question affecting the validity and enforceability of section 1522 arises from the apparent (and incorrect) impression of the voters that it was designed to modify another ordinance that was in effect. Again, neither party has argued here that the 2000 enactment of section 1522 was defective in light of that likely misunderstanding regarding its predicate. Just as importantly, the procedural context (as long as it not improper for some reason, which has not been shown to be the case here) and the name of the proposed legislation do not affect its validity. *See Inhabitants of the Town of Warren v. Norwood*, 138 Me. 180, 190 (1941). Rather, the resulting legislation must be examined substantively and gauged by its purpose and the enacting body's authority to create that law. *Id.* Therefore, here, despite the characterization of section 1522 as an effort to repeal and replace a non-existent ordinance, it still represents what appears to be a valid enactment, and the court treats it as such.

The final step of the legislative analysis is to examine the interplay and relationship between section 5 of the Board of Appeals Ordinance (which casts the Board as a fact-finding body) and section 1522 of the Land Use Ordinance as adopted in 2000 (which, the Town argues here, suggests that the board is an appellate body). As is noted above, under section 2691 a municipal board of appeals is deemed to conduct de novo

7

hearings and render findings of fact as in the first instance, unless the municipality has adopted an ordinance that "explicitly directs otherwise. . . ." *Stewart*, 2000 ME 157, ¶ 7, 757 A.2d at 776; *see also Yates*, 2001 ME 2, ¶ 11, 763 A.2d at 1171-72. Section 1522 does provide that its proceedings shall be controlled by two principles: first, the hearings "shall be held in accordance with State Laws. . .;" and second, its "deliberations and decisions [shall be] limited to appellate review." The second of these features certainly approaches the express designation of an appellate function required in *Stewart* and *Yates*. The first condition, however, may be suggestive of a reference to the provisions of section 2691. None of the parties has pointed to any provision of state law that governs an appellate process conducted by a municipal board of appeals. Further, that reference to "State Laws" was part of section 1522 when it was not even arguably sufficient to invoke an appellate role for the Board. In other words, when section 1522 was in effect prior to the 2000 amendment, the Board had a fact-finding function because none of the Town's ordinances had an express direction that the board served in an appellate capacity. Thus, section 1522 may well have referred to the procedural requirements set out in section 2691, which, for the reasons noted above, creates a de novo, fact-finding process.

Further, an examination of the effect of the 2000 amendment to section 1522 cannot ignore the provisions of section 5 of the Board of Appeals Ordinance. Although the enactment of the Board of Appeals Ordinance in 1997 included a repeal of all then-existing ordinances creating the then-existing Board, the 2000 enactment of section 1522 did not expressly repeal any other ordinances (such as all or part of the Board of Appeals Ordinance) with which it may have conflicted. Though (again) not argued by parties, one must consider whether the enactment of section 1522 in 2000 amounted to an implied repeal of section 5 of the Board of Appeals Ordinance, in light of the fact that these two ordinances create two very different roles for the Board (appellate and fact-finding). "Repeals by implication are not favored and the Legislature will not be presumed to have intended a repeal." *Small v. Gartley*, 363 A.2d 724, 729 (Me. 1976). Even beyond this, a repeal cannot be implied in a "dubious case." *Blair v. State Tax Assessor*, 485 A.2d 957, 960 (Me. 1984). Here, in light of the difficult history associated with section 1522 and the internal ambiguity created by the reference to "State Laws," the court is unwilling to

8

conclude that the 2000 enactment of section 1522 impliedly repealed those portions of the Board of Appeals Ordinance that govern the Board's procedures.

From this, the court concludes that under the applicable provisions of state and municipal law, the Board was required to conduct a de novo hearing on Seymour's challenges to the two stop work orders. The court recognizes that this conclusion may give little effect to the language in section 1522 that the Board's deliberations and decisions shall be "limited to appellate review." *See Stromberg-Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566, 569 (in construing a statute, "[w]ords must be given meaning and not treated as meaningless and superfluous."). This conclusion, however, is the unavoidable result of the considerations discussed above, including the high level of clarity with which an ordinance must establish a board's appellate function. Although an isolated view of a portion of section 1522 would support the conclusion that the Board's review should be appellate, an examination of that ordinance as a whole and a fair acknowledgement of the terms of section 5 of the Board of Appeals Ordinance, combine to undercut the argument that the Board is an appellate body. It is difficult – if not impossible – to reconcile the two ordinances when they are on an equal footing. However, the problems affecting section 1522 and the holdings of *Stewart* and *Yates* persuade the court in the end that the suggestion in section 1522 that the Board is purely appellate in nature must yield to the effects of section 5 of the Board of Appeals Ordinance.[8]

The actual proceedings conducted by the Board in this case must now be examined in light of the procedural requirements that flow from the court's construction

---

[8] It is also important to note that the Town's ordinances do not provide the CEO with a decision-making forum resulting in the issuance of a stop work order, that would provide an opportunity for a landowner or other interested party to participate. The Law Court has observed that a municipal board of appeals "ordinarily act[s] in a purely appellate fashion only when the applicant or petitioner has had an opportunity for hearing before another tribunal." *Stewart*, 2000 ME 157, ¶ 8, n.4, 757 A.2d at 776. Here, the record suggests that the Seymour's only involvement in the administrative process leading up to the CEO's issuance of the two stop work orders occurred when her husband and the CEO became engaged in an argument about the CEO's assessment of the work being performed on Seymour's land. Thus, at least in the circumstances of this case where the proceedings before the Board were not preceded by another hearing with a lower tribunal, the presumption is that the Board should act on a de novo basis. This provides further support for the conclusion noted in the text.

9

of the relevant ordinances. The level of confusion regarding the proper role of the Board, as revealed by the record of its meeting, is remarkably similar to the problems discussed by the Law Court in *Stewart*, which was issued several years prior to the hearing at issue here. During much of the proceedings, the parties (through counsel) treated the proceeding as if it were a true appeal, that is, one where "the Board will review the record of the proceedings before the previous tribunal, review the evidence presented to that body, review the tribunal's written or recorded findings, hear oral or written arguments of the parties, and determine whether the lower tribunal erred in reaching its decision." *Stewart*, 2000 ME 157, ¶ 8, 757 A.2d at 776. The attorneys engaged in lengthy presentations directly to the Board, explaining their positions and fielding questions from the Board's members. Seymour's attorney referred to the hearing several times as an "appeal." *See* R. 33 at pp. 1, 6, 14, 39. He further argued to the Board that the record "did not support the allegations in the stop work order. . . " *Id.* at p. 14. He also stated, "Your decision tonight is to look at the stop work orders and determine whether there is an evidentiary basis for them to be issued and to be upheld by the Board and we are asking you to reverse the decision of the code officer. . . ." *Id.* at p. 15. Similarly, the Town's attorney characterized the proceeding as an "appeal." *Id.* at p. 33.[9] The manner in which the Board framed its decision also has an appellate quality to it. As the written decision explained, "A motion was made to grant the appeal based on both Stop Work Orders being issued without the CEO finding his facts before issuing them." R. 31. The Board voted in favor of this motion, and it formed the basis for the Board's decision.

---

[9] On this appeal, the Town has characterized the municipal hearing as a "hybrid proceeding." Because there was no meaningful record of any proceedings that resulted in the stop work orders, the Town contends that the hearing held before the Board required a reconstruction of those factual circumstances, so that there would be something for the Board to review appellate-style. However, a "hybrid proceeding" is a different type of hearing altogether and is permitted only when the enabling legislation "specifically calls for the Board to act as both factfinder and appellate review tribunal. . . ." *Stewart*, 2000 ME 157, ¶ 10, 757 A.2d at 776-77. Here, although section 1522 of the Land Use Ordinance and section 5 of the Board of Appeals Ordinance call for the Board to act in those two different capacities, those capacities are not blended or integrated as properly hybridized proceedings would be. *See, e.g.,* 36 M.R.S.A. § 843. Rather, the two functions set out in the Town's ordinances are the result of the Town's failure to create a coherent and consistent framework for the Board's activities as they are addressed in two separate ordinances.

10

Despite this, the proceedings before the Board simultaneously had trappings of a de novo approach. For example, there was little or no record of the lower proceeding that the Board could review. Further, the attorneys for *both* parties presented testimonial evidence to the Board. The CEO testified when the Town was given its opportunity to present evidence. The CEO made an initial statement explaining the basis for his actions, and he was then questioned by Seymour's attorney, by members of the Board and by the Town's attorney. R. 33 at pp. 25-29, 47, 50. Seymour herself addressed the Board to provide her account of the nature of her property, the historical use of her property, the circumstances that led to the issuance of the stop work orders and the reasons she opposed the CEO's decision to issue those orders. *Id.* at pp. 43-46. Seymour's husband also made remarks to the Board regarding the factual issues implicated in the case. *Id.* at p. 50. The Board called for any abutters who wished to be heard. *Id.* at p. 39. (None was present.) Seymour's attorney called on the Board to make "findings," *id.* at p. 49, and in fact he submitted proposed findings, which are clearly factual in nature. R. 30.

In short, although the Board's decision was framed in a way that suggests that it rested on an appellate analysis, many important features of the hearing were more typical of a de novo hearing. As a result, just as in *Stewart,* "the Board accepted evidence, but nevertheless reached its decision as if it were an appellate body." 2000 ME 157, ¶ 15, 757 A.2d at 778.

This court has concluded that the Board's proper role, in entertaining an appeal from a stop work order issued by the CEO, is to conduct a de novo hearing. This case must be remanded to the Board so that it may conduct a new hearing that complies with the provisions of section 5 of the Town's Board of Appeals Ordinance and the provisions of 30-A M.R.S.A. § 2691. Much of the information presented to the Board during the August 2002 hearing came from the attorneys themselves, just as if counsel's presentations were based on a record. This, however, is not a substitute for evidence. Therefore, to allow the evidence to be presented in proper form, a new hearing shall be held to permit the parties to present competent information. In the Board's discretion, the new hearing may either supplement proper evidence presented at the August 2002 hearing or consist of the creation of a completely new record.

11

The entry shall be:

For the foregoing reasons, the decision of the Town of Levant Board of Appeals is vacated. This matter is remanded to the Board for further proceedings consistent with this opinion.

Dated: June 9, 2003

_____
Justice, Maine Superior Court

Date Filed ___ 9/6/02 ___ ___ Penobscot ___ Docket No. __ AP-2002-26 ___
County

Action ___ Rule 80B Appeal ___
**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

INHABITANTS OF THE TOWN OF LEVANT          vs.          LAURIE MULLEN SEYMOUR   and   10/28/02
                                                        *TOWN OF LEVANT BOARD OF APPEALS*Dismissed

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| FARRELL, ROSENBLATT & RUSSELL<br>P O BOX 738<br>Bangor ME  04402-0738<br>BY: Thomas Russell, Esq. | Robert E Miller Esq<br>17 N. Main St<br>P O Box 414<br>Old Town ME  04468<br>FOR: Laurie Seymour |

| Date of Entry | |
|---|---|
| 9/6/02 | Complaint pursuant to Rule 80B of the Maine Rules of Civil Procedure filed. |
| 9/10/02 | Notice and Briefing Schedule 80 B Appeal of Governmental Actions forwarded to attorney for Appellant and to Robert Miller, Esq. for Deft. Seymour and to Defendant, Town of Levant Board of Appeals,  P O Box 220, Levant ME  04456 |
| 9/23/02 | Defendant's Motion to Dismiss and Incorporated Memorandum filed. |
| 9/23/02 | Request for Hearing on Defendant's Motion to Dismiss filed by Defendant. |
| 9/26/02 | Acceptance of Service as to Defendant Laurie Mullen Seymour filed by Plaintiff (s.d. 9/16/02 by Robert E. Miller, Esq.) |
| 9/26/02 | Acknowledgement of Receipt and Acceptance of Service as to Defendant Town of Levant Board of Appeals.  (s.d. 9/10/02 by Derik Goodine, Town Clerk) |
| 10/02/02 | Entry of Appearance filed by Robert E. Miller Esq. on behalf of Defendant Laurie M Seymour. |
| 10/04/02 | Plaintiff's Motion for Enlargement of Time with incorporated Memorandum. |
| 10/8/02 | File presented to Justice Mead for review. |
| 10/9/02 | Letter received by Thomas Russell, Esq., advising court that Plaintiff's do not oppose the Defendant's Motion to Dismiss as to the Defendant Town of Levant Zoning Board of Appeals. |