STATE OF MAINE
HANCOCK, SS.

CIVIL ACTION
Docket No. AP-04-2

Catherine M. Barrett,
    Plaintiff

v.

Order on Appeal

Town of Bar Harbor et al.,
    Defendants

NOV 1 2004

Pursuant to 30-A M.R.S.A. § 2691(3)(G), Town of Bar Harbor (Maine) Ordinance § 125-107 ("Ordinance") and M.R.Civ.P. 80B, Catherine Barrett appeals from a decision of the Town of Bar Harbor Board of Appeals concluding that the abutting property, defendant John Nelson, did not violate the lot coverage limitations applicable to his land. The court has considered the parties' submissions on this appeal.[1]

A portion of Nelson's property is within the Town's Historic District, and the remainder is within the Shoreland Limited Residential. The maximum lot coverage for the former is 35%, see Ordinance at § 125-18(F), and it is 20% in the latter, see id. at § 125-48(G). See R. 23 (survey of Nelson property). In November 2001, Barrett's counsel sent a letter to the Town's code enforcement officer, alleging that 43% of the portion of the Nelson lot falling within the parameters of the Historic District was covered, and that 33% of the Shoreland District portion was covered. See R. 13. The CEO advised Nelson of this complaint and solicited his response. See R. 18. She wrote that in the absence of such a response, she would evaluate the complaint based only on the information that Barrett had provided. Id. Nelson's counsel then sent a letter to the CEO, explaining why certain areas of his land did not constitute "coverage" within the meaning of the municipal land use ordinance. See. R. 19. The issues raised in this letter forecasted the issues raised in this appeal: he contended then, as he does now, that lot coverage does not

---

[1] Barrett and Nelson have participated actively in the pending appeal. The Town has chosen not to do so.

1

include a bark mulch surface on private walkways; that it does not include a publicly accessible shorefront pathway and a pedestrian easement that connects the shorefront pathway and a street; and that it does not include an area used for a driveway.

The CEO took no action on this matter until July 16, 2003, when, shortly after receiving another letter from Barrett, she issued a "Notice of Violation" against Nelson. *See* R. 17. In that letter, the CEO adopted the calculations set out in Barrett's 2001 complaint, and she instructed Nelson to provide her with a corrective plan. Although they were beyond the deadline she imposed, Nelson subsequently sent the CEO two responsive letters. *See* R. 20, 26. In them, he proposed to replace the mulch with plantings (thyme and moss). He reiterated, however, that the two public pathways and the area used as a driveway are not improved and thus do not constitute coverage. The CEO concluded that as a result of Nelson's corrective plan to replace the mulch with plantings, those walkways would not be covered within the meaning of the ordinance, and she also concurred with Nelson's position that the public pathways and the driveway areas were not improved and thus not covered areas. *See* R. 27.

Barrett appealed the CEO's decision to the Town's Board of Appeals. *See* Ordinance at § 125-103(A). After receiving evidence at a public hearing and then engaging in open deliberations, the Board construed the ordinance's definition of "lot coverage," *see* Ordinance at § 125-109, to exclude a bark mulch surface. *See* R. 2. The Board also found that the surfaces of the two public pathways and the driveway area were not improved and thus were not part of lot coverage. *Id.* Based on these findings and conclusions, the Board determined that Nelson's property complied with the ordinance's lot coverage requirements. Barrett then filed a timely appeal from that decision to this court.

## A. Timeliness of appeal to Board of Appeals

Nelson first challenges the timeliness of Barrett's appeal from the decision of the CEO to the Town's Board of Appeals. He contends that the ongoing lack of any action by the CEO in response to Barrett's 2001 complaint constitutes an implicit denial of that complaint, thus at some point triggering the 30 day time in which Barrett was allowed to appeal.

2

The Town's ordinance vests an aggrieved party with a right to appeal a municipal decision within 30 days of that decision. *See* Ordinance at § 125-103(A). This section provides that "a decision shall include a decision by said official to act or not act on any request, including but not limited to a request for an enforcement action." The plain language of this municipal legislation therefore requires either an affirmative act by the municipal official, or an affirmative declination to act. The record on appeal makes clear that the CEO made no affirmative decision responsive to Barrett's 2001 complaint until October 27, 2003, when she issued her written notice of her decision not to pursue an enforcement action against Nelson. *See* R. 27. This letter embodies the CEO's "decision to. . .not act," as the event is described in the ordinance. The date of that decision started the 30 day appeal period to the Board of Appeals. Based on these calculations, Barrett's appeal to the Board was timely.

In support of his argument on this point, Nelson draws on the provisions of M.R.Civ.P. 80B to argue that the CEO waited for such a long period of time prior to her October 27 letter, that she should be deemed to have denied Barrett's complaint. *See* M.R.Civ.P. 80B(b) (a rule 80B complaint must be filed within 30 days of the underlying decision or "within six months after expiration of the time in which action should reasonably have occurred."). Rule 80B, however, governs procedures for appeals to the Superior Court rather than appeals from a CEO's decision to a local board of appeals. The latter procedure is controlled by local ordinances, which here, as is noted above, requires an affirmative decision to trigger a period of time in which an appeal may be filed.

Therefore, Barrett's appeal to the Board of Appeals was timely.

## B. Nature of Board of Appeals hearing

The CEO ultimately decided that the two publicly accessible walkways and the driveway area were not improved and thus did not represent covered areas for purposes of determining Nelson's conformity with the lot coverage limitations. The Board of Appeals later agreed with this conclusion. However, the CEO and the Board of Appeals reached differing conclusions on a separate point, namely, whether a mulch covered pathway is a form of cover for purposes of calculating the amount of lot coverage. This

3

difference of opinion generates the question of whether this court reviews the CEO's decision or the Board's decision.

The Law Court has held, "If the Board of Appeals acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly. . . . If, however, the Board acted only in an appellate capacity, we review directly the decision of the Planning Board, or other previous tribunal, not the Board of Appeals." *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773, 775.[2] Title 30-A M.R.S.A. § 2691(3)(D) requires a board to adjudicate a dispute de novo and render a decision in a factfinding capacity, rather than to examine a lower decision from an appellate perspective, "unless the municipal ordinance explicitly directs otherwise." *Stewart*, 2000 ME 157, ¶ 7, 757 A.2d at 776.

Here, hearings before the Board are governed by section 125-103 of the Town's ordinance. Subsection (B) identifies the contents of the petitioner's application. That application must include any transcript from the underlying proceeding; copies of materials submitted to the entity or person whose decision is the subject of the appeal; and copies of the findings issued by the lower tribunal. The Board then is required to "conduct a public hearing, *which hearing shall not be a de novo hearing. . . .*" *See* Ordinance at § 125-103(D)(emphasis added). Section 125-103(E) provides that the Board shall decide whether or not "the decision appealed is clearly contrary to the specific provisions of this chapter. . . ." The Board is empowered to reverse the lower decision, deny the appeal, or "vacate the decision and . . .remand it to. . .the Code Enforcement Officer for further proceedings consistent with the Board of Appeals' decision." *Id.* Thus, most of these provisions of the municipal ordinance cast the Board as an appellate body when it considers the types of issues as those at bar.

On the other hand, several aspects of the Board's hearing procedure are more consistent with a de novo factfinding hearing. First, the ordinance requires that the Board issue a written decision that includes "findings of fact." *See* Ordinance at § 125-103(E). Second, the Board is authorized to accept and consider information that is not part of any

---

[2] On an administrative appeal, both the Superior Court and then the Law Court review the controlling municipal decision, and thus the same appellate analysis applies here. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171.

4

record created during the proceeding that is the subject of the appeal. This includes "[s]uch other [supplemental] materials as the appellant believes will be of assistance to the Board of Appeals in making its decision." *Id.* at § 125-103(B)(7). Additionally, "any other person" is entitled to submit documentary evidence to the Board prior to the public hearing. *Id.* at § 125-103(C)(2).

Further, it is proper to consider the way in which the Board actually conducted the hearing at issue, to help determine whether it functioned in a fact-finding or appellate capacity. In *Yates*, the Law Court found that the municipal board was to conduct its hearings de novo because the local ordinance did not explicitly countermand the statutory provision that such boards act in that capacity. *Yates*, 2001 ME 2, ¶ 11, 763 A.2d at 1171-72. However, the Court went on to examine the way in the Board actually functioned during the hearing at issue in that case. *Id.*, ¶ 14, 763 A.2d at 1172. On the basis of that review, the Court concluded that some qualities of the Board's proceedings were appellate in nature. Here, Barrett herself presented evidence of the condition of Nelson's premises as it existed subsequent to the CEO's decision not to take enforcement action against him. *See* R. 5 (transcript of Board's public hearing) at p. 7; R. 37. Further, the record includes photographs, presented to the Board by Barrett, taken of Nelson's property in November 2003. *See* R. 11, 12 (presented to Board by Barrett's counsel, *see* R. 5 at p. 5). Barrett may have presented this evidence to try to demonstrate that the CEO's factual findings were incorrect. However, this evidence necessarily establishes the Board's proceedings as de novo, because it is testimonial and documentary information that exceeds the scope of the data that the CEO considered when she made her decision. Barrett cannot be heard to argue now that either that the Board was permitted to proceed only in an appellate capacity or that it erred when it failed to do so.

Thus, based on these circumstances, the court treats the proceedings before the Board as a de novo hearing and accordingly reviews the Board's decision for error. *Stewart*, 2000 ME 157, ¶ 4, 757 A.2d at 775.

### C. Merits of appeal

The substantive issues raised in this appeal are, first, whether the Board correctly construed the Town's ordinance to exclude mulch as a material that consists of a cover for purposes of determining the extent of lot coverage, and, second, whether the Board

5

erred in its factual findings that the publicly accessible walkways and the driveway area are not improved and thus not to be within the calculation of coverage for Nelson's lot. Both issues are tied to the definition of "lot coverage" included in the Town's ordinance:

> ...the footprint area of all structures and improvements shall be considered to be lot coverage, including but not limited to principal and accessory buildings; all improved vehicular and pedestrian surfaces such as parking lots, roads, driveways, maneuvering spaces, and pedestrian walkways, regardless of the construction material employed; or graveled areas. Unimproved natural surfaces of a site shall not constitute lot coverage, regardless of whether they are vegetated. Boats stored in cradles above an unimproved natural surface shall not constitute lot coverage. However, in the case of lumber yards, areas of stored lumber shall constitute lot coverage.

Ordinance at § 125-109

### 1. Characterization of mulch

The CEO concluded, at least implicitly, that mulched areas are part of lot coverage. She then determined that walkways with planted surfaces (here, thyme and moss) are not considered a lot cover for purposes of the restrictions on development imposed by the ordinance. The Board reached back to the CEO's initial decision and examined the mulch issue.[3] Resolution of this issue rests on the construction of the ordinance's definition of "lot coverage." The Law Court has held:

> Interpretation of the provisions of a zoning ordinance is a question of law that we review de novo. *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 8, 755 A.2d 485, 487. We give weight to an administrative agency's interpretation of an ordinance administered by it, and we should uphold such a construction unless the statute or ordinance clearly compels a contrary result. *Wright v. Town of Kennebunkport*, 1998 ME 184, ¶ 5, 715 A.2d 162, 164. An agency's construction, however, is not conclusive or binding on us. *Id.* We interpret an ordinance "by first looking at

---

[3] Although there was some discussion at the Board's hearing on whether Nelson was bound by that earlier decision, which he did not appeal, Barrett does not argue on this appeal that this procedural sequence precluded the Board from considering it. If that were the case, then the only remaining question regarding the pathway is whether the plantings of thyme and moss constituted a lot cover. Because Barrett does not make that preclusion argument, the court addresses the merits of the Board's decision regarding mulch. Moreover, it bears note that Barrett argued before the Board that Nelson's walkways are covered areas regardless of whether the surface of those walkways is bark mulch or vegetation. *See* R. 5 at pp. 13-14. Thus, as Barrett framed her position to the Board, the distinction is immaterial.

6

the plain meaning of the language to give effect to legislative intent." *Banks v. Maine RSA # 1*, 1998 ME 272, ¶ 4, 721 A.2d 655, 657 (quoting *Clarke v. Olsten Certified Healthcare Corp.*, 1998 ME 180, ¶ 6, 714 A.2d 823, 824). "In doing so '[t]he terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole.'" *Id.* (quoting *Gerald v. Town of York*, 589 A.2d 1272, 1274 (Me. 1991)).

*Griffin v. Town of Dedham*, 2002 ME 105, ¶ 6, 799 A.2d 1239, 1241-42.

Particularly when giving the appropriate level of deference to the Board's construction of the ordinance that it is charged with applying and enforcing, the court does not find error in its conclusion that bark mulch is not an improved surface for purposes of the ordinance. The plain terms of the ordinance's definition of "lot coverage" are not dispositive of the issue presented here, because the definition is ambiguous. On the one hand, the definition includes "all. . .pedestrian surfaces. . . ." This is a limitless concept and would include everything on which pedestrians walk. Then, the definition reveals a limitation, namely, that a cover consists of "construction materials." Bark mulch can be a pedestrian surface but is not a construction material. Thus, resolution of this ambiguity – to determine if mulch is within or without the definition of "lot coverage" – requires reference to the objectives of the legislation.

Some of the stated purposes of the Town's land use ordinance include goals of "[p]rotecting and enhancing the natural. . .resources of the Town of Bar Harbor," "[p]roviding standards to control the intensity of development in areas of sensitive or significant natural resources in order to reduce or eliminate adverse environmental impacts," and "[p]rotecting buildings and land from. . .accelerated erosion. . . ." *See* Ordinance at §§ 125-3(D), (G), (P). The use of bark mulch (or, for that matter, the use of plantings such as thyme or moss) promotes these goals because the application of mulch to a walkway inhibits wear that foot traffic would otherwise create, and that protective layer in turn reduces the likelihood of damaging erosion. Further, a layer of mulch creates a favorable aesthetic effect in comparison to the worn path that could result in the exposure of bare soil.

This construction of the term "lot coverage" does not compromise any of the objectives of the ordinance. Although the legislative standard is not whether the cover is impervious or not, which was a consideration used by the Board, bark mulch would not

7

be expected to materially disrupt natural waterflow or lead to other consequences that the lot coverage restrictions are designed to control. More generally, it is not an example of development that one would expect this type of ordinance to address.

For these reasons, the court concludes that the Board did not err when it concluded that bark mulch is not a form of cover that is within the definition of "lot coverage." The court need not address Barrett's challenge to the Board's alternate conclusion, namely, that the locations where Nelson had applied the bark mulch were not "pedestrian walkways" within the meaning of the definition of "lot coverage." Barrett does not challenge the quantitative effect of the Board's decision, which resulted in its conclusion that, after excluding the area of the mulch-covered walkways, Nelson did not exceed the restrictions on lot coverage for that portion of his land that is located in the Shoreland Limited Residential district.

## 2. Improvements of publicly accessible pathways

The Board also concluded that the two publicly accessible pathways located on Nelson's land (one of which runs along the shore, and the other, running perpendicular to the water, connecting that pathway to a public street) were not improved. The Board reached the same conclusion regarding the area that Nelson uses as a driveway. The definition of "lot coverage" plainly excludes "[u]nimproved natural surfaces of a site. . . ." *See* Ordinance at § 125-109. Because of this express exclusion, the area of any such unimproved natural surface is not included in a calculation of "lot coverage," even if that surface is used for purposes that otherwise would require that it be so included (including "driveways, maneuvering spaces, and pedestrian walkways. . ."). The question of whether the surfaces of those areas are improved is a question of fact. Factual findings are reviewed to determine if they are supported by substantial evidence in the record. *Kurlanski v. Portland Yacht Club*, 2001 ME 147, ¶ 7, 782 A.2d 783, 784. As the appellant before the Board, Barrett must demonstrate here that on the hearing record, the Board was compelled to reach a contrary conclusion. *Cf. Veilleux v. City of Augusta*, 684 A.2d 413, 415 (Me. 1996) (unsuccessful permit applicant must establish that municipal board was compelled to reach favorable findings).

Here, the record includes evidence that the two pathways were not improved and, more specifically, that gravel had not been used as a surface, despite Barrett's claims to

the contrary. This evidence is found in Nelson's letters to the CEO, *see* R. 1 (letter dated October 21, 2003), R. 20 (letter dated August 1, 2003), and in the findings rendered by the CEO herself, *see* R. 1.

Finally, Barrett's expert, a surveyor who concluded that Nelson's lot coverage exceeded the limitations created by the ordinance, testified that he regarded the driveway area as a gravel surface (in other words, improved) because a set of plans for Nelson's property describes that area as a "future gravel driveway and parking area. . . ." *See* R. 5 at p. 8. The expert did not reach that conclusion based on a visit to the site. The Board was compelled to conclude that the area presently has a gravel surface. Beyond this, the Board was also presented with evidence that the area used as a driveway is "natural and unimproved." *See* R. 1 (Nelson's letter of October 21, 2003); *see also* R. 20, R. 1 (CEO's findings); Appellee's Brief, exhibit B (summary of testimony of Stewart Brecher, included as part of the record on appeal by agreement (*see* Appellee's Brief at p. 9, n. 6). This record supports the Board's conclusion that these areas were not improved and that, under the definition of "lot coverage," they do not constitute areas that are included in the lot coverage calculation. Barrett does not challenge the Board's calculations that, excluding the surface area of the public pathways and driveway area, Nelson's property complies with the lot coverage provisions of the ordinance.

The entry shall be:

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Dated: October 14, 2004

_____
Justice, Maine Superior Court

FILED &
ENTERED

OCT 1 8 2004

SUPERIOR COURT
HANCOCK COUNTY