2007 ME 93

**Stephen GRISWOLD**

v.

**TOWN OF DENMARK et al.**

and

**Nestlé Waters North America Inc.**

v.

**Town of Fryeburg et al.**

Supreme Judicial Court of Maine.

Argued: April 10, 2007.

Decided: July 24, 2007.

Juliet T. Browne, Scott D. Anderson (orally), Verrill Dana, LLP, Portland, for Griswold and Western Maine Residents for Rural Living.

Philip F.W. Ahrens, Catherine R. Connors (orally), Joanna B. Tourangeau, Pierce Atwood, LLP, Portland, for Nestle Waters North America Inc.

Michael H. Hill, Monaghan Leahy, LLP, Portland, A. Kingman Pratt, Fryeburg, for Towns of Denmark and Fryeburg.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, SILVER, and MEAD, JJ.

CLIFFORD, J.

[¶ 1] This consolidated appeal consists of two matters regarding the extraction and transportation of bulk quantities of water by Nestlé Waters North America Inc. d/b/a Poland Spring Bottling Company (Nestlé).

[¶ 2] In the first of the two cases, both of which were filed in the Superior Court pursuant to M.R. Civ. P. 80B, Stephen Griswold appeals from the decision of the Superior Court (Oxford County, *Cole, J.*) affirming the decision of the Town of Denmark Board of Selectmen granting Nestlé an extraction permit to withdraw and transport water in bulk. Griswold contends that the Board of Selectmen erred in determining that Nestlé sufficiently established two of the criteria necessary to obtain a bulk water extraction permit pursuant to governing ordinance provisions. We disagree, and affirm the judgment.

[¶ 3] In the second case, also governed by M.R. Civ. P. 80B, Nestlé appeals from a decision of the Superior Court (Oxford County, *Cole, J.*) remanding to the Town of Fryeburg Planning Board for further findings and conclusions, a decision of the Planning Board granting Nestlé a permit to construct a water loadout facility. Nestlé contends that the Superior Court erred in failing to reinstate the Planning Board's decision granting the permit, and that the Planning Board's findings are supported

by substantial evidence in the record. Party-in-interest Western Maine Residents for Rural Living (WMRRL), composed of abutting landowners and other residents of the Town of Fryeburg, cross-appeals, arguing that the Planning Board erred in concluding that Nestlé's proposed facility satisfies all applicable ordinance criteria. Because it was taken from a Superior Court judgment that is not a final judgment, we dismiss the appeal.

## I. BACKGROUND

[¶ 4] In 2005, Nestlé began efforts to obtain permission to extract bulk quantities of water from the Town of Denmark, to pump that water by pipeline to an associated water loadout facility in the Town of Fryeburg, and to then haul the water by tanker trucks from Fryeburg to Nestlé's bottling facilities in one of three locations: Poland, Maine; Hollis, Maine; or Framingham, Massachusetts.

[¶ 5] To that end, in May of 2005, Nestlé filed an application with the Town of Denmark Board of Selectmen for a permit to extract water in a maximum daily amount of 432,000 gallons from two boreholes in the Cold Spring area of the Town. In June of 2005, Nestlé also submitted an application for site plan review to the Town of Fryeburg Planning Board, seeking a permit to construct: (1) a water loadout facility with access to Route 302, (2) a pipeline 5500 feet in length, and (3) an above-ground water storage silo. Subject to several conditions, both towns approved Nestlé's applications.

[¶ 6] Denmark resident and abutting landowner Stephen Griswold challenged the Denmark Board of Selectmen's decision by filing a complaint in the Superior Court pursuant to M.R. Civ. P. 80B. Gris-

wold filed this appeal to us from the decision of the Superior Court affirming the decision of the Board of Selectmen.

[¶ 7] Meanwhile, WMRRL appealed the Fryeburg Planning Board's decision to the Town of Fryeburg Board of Appeals. The Board of Appeals vacated the Planning Board's approval. Nestlé then filed a complaint in the Superior Court pursuant to M.R. Civ. P. 80B, challenging the decision of the Board of Appeals; WMRRL cross-appealed to the Superior Court challenging the decision of the Planning Board. The Superior Court concluded that the Board of Appeals erred in vacating the decision of the Planning Board, and vacated the decision of the Board of Appeals. The court did not order reinstatement of the Planning Board decision, however, but remanded the matter to the Planning Board, for that Board to consider other criteria found in the Town's Comprehensive Plan, criteria the court considered relevant to Nestlé's entitlement to the permit it sought. From this decision, Nestlé appealed and WMRRL cross-appealed to us.

## II. DISCUSSION

### A. Griswold v. Town of Denmark et al.

[¶ 8] Among the many considerations and criteria the Board of Selectmen must review in deciding whether to grant an extraction permit in the Town of Denmark, the ordinance provisions applicable at the time of Nestlé's application required that Nestlé establish: (1) that "water is not available naturally in the location to which it will be transported," and (2) that "failure to authorize transport of the water would create a substantial hardship to the potential recipient of the water."[1] Denmark,

---

1. The Town of Denmark Board of Selectmen found that Nestlé satisfied its burden relating to all geologic and hydrologic criteria by es-

tablishing that its extraction will not have any adverse effects on the Town's water supply or the sustainability of the aquifer. *See* Den-

Me., Regulations Governing the Large Scale Pumping or Extraction of Groundwater, Spring Water and/or Water from Aquifers Within the Municipality of Denmark, Maine § V(C)(3), (4) (2004) [hereinafter Regulations Governing Water]. Neither "substantial hardship" nor "available naturally" are defined in the Regulations Governing Water, nor are they defined in State statutory provisions regarding the transport of bulk water governing at the time of Nestlé's applications.[2] *See* 22 M.R.S. §§ 2660 to 2660–A (2006).

[¶ 9] The Board of Selectmen concluded that Nestlé, which had the burden before the Board to establish each of the criteria necessary for the grant of its requested permit, *see Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 18, 868 A.2d 161, 166, met its burden. Griswold contends that the Board of Selectmen's findings as to the two criteria are not supported by sufficient record evidence as a matter of fact and as a matter of law.[3] Because the Superior Court acted in its appellate capacity, we review directly the decision of the Board of Selectmen for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *See id.* ¶¶ 7, 16, 868 A.2d at 163–64, 166 (quotation marks omitted). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Id.* ¶ 16, 868 A.2d at 166 (quotation marks omitted). We review the factual findings of the Board of Selectmen deferentially, and do not substitute our own

mark, Me., Regulations Governing the Large Scale Pumping or Extraction of Groundwater, Spring Water and/or Water from Aquifers Within the Municipality of Denmark, Maine § V(A) (2004) [hereinafter Regulations Governing Water]. Griswold does not challenge those findings of the Board of Selectmen.

**2.** Title 22 M.R.S. §§ 2660 to 2660–A (2006) govern the transportation of water in bulk quantities away from its natural location for commercial purposes. In addition to satisfying local ordinance provisions, parties seeking to transport water in bulk must also receive approval from the State. 22 M.R.S. § 2660–A. At the time of Nestlé's applications to both towns, section 2660–A provided that the Commissioner of the Department of Health and Human Services may authorize transportation of bulk water for commercial purposes if, among other requirements, "[w]ater is not available naturally in the location to which it will be transported," and "[f]ailure to authorize transport of the water would create a substantial hardship to the potential recipient of the water." 22 M.R.S. § 2660–A(3). Thus, the local criteria for bulk water transport mirrored that of the State as to these two particular requirements. The Commissioner approved Nestlé's State application to transport water. That decision was appealed by Griswold to the Superior Court pursuant to 5 M.R.S. §§ 11001–11008 (2006) and M.R. Civ. P. 80C. Section 2660 has since been repealed by the Legislature, and both of the above requirements have been removed from section 2660–A. P.L. 2007, ch. 399, §§ 3–7.

**3.** As a preliminary matter, we are not persuaded by Nestlé's contention that Griswold's appeal is moot because, subsequent to Griswold filing this appeal, the two criteria at issue have been deleted from the Town's Regulations Governing Water. Pursuant to 1 M.R.S. § 302 (2006), "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." Such proceedings expressly include "petitions or applications for licenses or permits required by law at the time of their filing." 1 M.R.S. § 302. Although the Town could have made its amendments to the Regulations Governing Water apply retroactively, its failure to do so means that even if we were to remand the matter to the Board of Selectmen, the Board would still be bound to apply the Regulations Governing Water as they existed at the time of Nestlé's application. *See Kittery Retail Ventures, LLC v. Town of Kittery*, 2004 ME 65, ¶ 20, 856 A.2d 1183, 1191 (discussing the authority of municipalities to enact retroactive ordinance amendments by "clear and unequivocal language that the statute or ordinance applies to pending proceedings").

judgment for that of the Board. *See id.* ¶ 17, 868 A.2d at 166. Further, the fact that the record before the Board is inconsistent or could support a different decision does not render the decision wrong; the Board's decision should be vacated only if no competent evidence exists in the record to support it. *See id.*

■ [¶ 10] The factual evidence Nestlé offered to the Board of Selectmen to support the Board's findings of substantial hardship and natural unavailability consists of the following. In its application to the Board of Selectmen, Nestlé stated, "[s]ufficient water is not available naturally in those locations to meet the needs of those facilities and failure to authorize transport of water to those facilities would create a substantial hardship." In its corresponding application to the Department of Health and Human Services, *see supra* n. 2, a document that was also included in its application to the Board of Selectmen, Nestlé stated:

> Failure to authorize transport of the water will significantly limit the ability of Poland Spring Bottling Company to meet the natural resource needs of this growing business and its ability to remain competitive in the industry. Remaining competitive in this industry will support the ability of Poland Spring to contribute employment opportunities to the people of the State of Maine. Also, growth experienced by Poland Spring will result in an economic contribution to the State through a variety of tax mechanisms, direct payroll, and use of local subcontractors,

and that:

> [t]he purpose of the proposed development and the associated application for a bulk water transport permit is related to our forecasted need to supplement existing sources to accommodate our projected business growth. We understand the

sustainable limitations of existing sources and are developing additional sources to augment those supplies. The bottled water industry has enjoyed significant growth over the last several years [and] we project that this trend will continue in the Northeast region, the principal market for the Poland Spring Brand of spring water.

In a further letter to the Board of Selectmen, Nestlé wrote:

> The existing sources of spring water which Poland Spring has within the State of Maine cannot sustainably produce sufficient water to meet the existing capacity needs of the destination bottling facilities in Poland Spring and Hollis, Maine and in Framingham, Massachusetts. To the extent Poland Spring fails to maintain the availability of water by adding sources such as the source in Denmark, Maine, it will encounter a concomitant decline in market share and substantial hardship to its sustainability as a business.
>
> In addition to the substantial hardship encountered by Poland Spring, denial of approval of the proposed site in Denmark would also result in substantial hardship to end consumers. The water currently bottled by these facilities is insufficient to meet the current and projected demand for Poland Spring water. In order to continue to provide the water sought by these consumers, this site is essential. Additional water at our existing spring water sources is not available based on State permit limits.

[¶ 11] The application to the Board was prepared by two engineering firms hired by Nestlé, includes the statements of engineers who are knowledgeable experts, and constitutes competent evidence in the record that is sufficient to support the Board's findings. Nestlé also offered evidence as to its position in the bottled water

industry in which it is engaged, and the substantial hardship it will suffer if denied access to the water in the Town of Denmark. In short, there is some competent evidence in the record to support the Board of Selectmen's findings of substantial hardship and natural water unavailability, and we do not substitute our judgment for that of the Board in such a factual matter.

[¶ 12] Griswold further contends, based on our decision in *Centamore v. Department of Human Services*, 664 A.2d 369 (Me.1995), that evidence of financial harm in a competitive market, even evidence that is supported by the record, cannot, by itself, constitute substantial hardship as a matter of law. In *Centamore,* a landowner applied to the Department of Human Services pursuant to State bulk water transport statutes to obtain a permit to transport water from his property to bottlers located in other municipalities. 664 A.2d at 370. The Commissioner of the Department granted the landowner's permit, and neighboring residents appealed to the Superior Court, which affirmed the Department. *Id.* We concluded that the Commissioner's finding of substantial hardship was not supported by the record because the only evidence of such hardship was the landowner's opinion that "buyers of spring water are engaged in a competitive market, and are in need of a guaranteed pure source of water, and would suffer substantial hardship if the water were not available." *Id.* at 371 (quotation marks omitted). We reasoned that, "[a]rgument is not evidence," and that, "[t]he mere fact that a competitor in the bottled water market would benefit from having another water source says nothing about any substantial hardship that would result if the source were unavailable." *Id.*

[¶ 13] As the Superior Court aptly noted, however, Nestlé's circumstances are distinguishable from those of the landowner in *Centamore.* First, the focus of *Centamore* was more on the *benefit* that the bottler would receive from obtaining the water, rather than on any *hardship* that would result from it being unable to obtain the water. There is nothing in the *Centamore* decision that precludes a state or municipal body from issuing a water transport permit based on the harm a bottler would suffer to its ability to compete in the open market.

[¶ 14] Second, in *Centamore,* the only evidence of hardship to the bottler was an opinion offered by the landowner rather than by the bottler itself, whose hardship was the relevant inquiry for the permit being sought. In contrast, in the present matter, Nestlé presented evidence of the hardship it would suffer itself. The Superior Court noted that the landowner "was not competent to testify to the hardship, if any, the commercial bottler would suffer if denied access to his source. By contrast, [Nestlé] is competent to testify on its own behalf regarding the harm it would suffer from a denial of the Extraction Permit." Such statements by Nestlé are more than the arguments that were presented by the landowner in his application; they constitute a company's assessment of its own financial circumstances in the market in which it is actively engaged. They were also opinions that were credited by the Board of Selectmen approving Nestlé's application for an extraction permit.

[¶ 15] We affirm the decision of the Town of Denmark Board of Selectmen.

B. Nestlé Waters North America Inc. v. Town of Fryeburg et al.

[¶ 16] Although neither party has raised the issue of ripeness, the record reveals that the appeal in this case is from a judgment that is not yet final. Only final judgments are subject to appellate review.

*In re Adoption of Matthew R.*, 2000 ME 86, ¶ 4, 750 A.2d 1262, 1264. A compelling rationale underlies the final judgment rule:

> The final judgment rule prevents piecemeal litigation, and helps curtail interruption, delay, duplication and harassment; it minimizes interference with the trial process; it serves the goal of judicial economy; and it saves the appellate court from deciding issues which may ultimately be mooted, thus not only leaving a crisper, more comprehensible record for review in the end but also in many cases avoiding an appeal altogether.

*Millett v. Atl. Richfield Co.*, 2000 ME 178, ¶ 8, 760 A.2d 250, 253 (quotation marks omitted). "A final judgment or final administrative action is a decision that fully decides and disposes of the entire matter pending before the court or administrative agency, leaving no questions for the future consideration and judgment of the court or administrative agency." *Carroll v. Town of Rockport*, 2003 ME 135, ¶ 16, 837 A.2d 148, 154. Further, "[a]fter a final judgment there is no likelihood of further trial court proceedings that will render the appellate court's decision immaterial." Alexander, *Maine Appellate Practice* § 301 at 158 (2004).

[¶ 17] In this case, WMRRL appealed the Planning Board's approval of Nestlé's application to the Board of Appeals, which vacated the Planning Board's decision. The Superior Court then vacated the decision of the Board of Appeals, but did not reinstate the decision of the Planning Board. Rather, the court remanded the matter to the Planning Board for further findings and conclusions. In short, the last event in the procedural history of this case was the Superior Court's decision remanding the matter to the Planning Board for further action. The record before us contains no indication that the Planning Board has yet acted in accordance with that mandate, and thus, the matter is still pending and awaiting final judgment. *See Stewart Title Guar. Co. v. State Tax Assessor*, 2006 ME 18, ¶¶ 2–3, 892 A.2d 1162, 1162–63 (holding that an appeal from a trial court order remanding a matter to another court or administrative agency for further action is an interlocutory appeal that will not be addressed on the merits until the action on remand has been completed); *see also* M.R. Civ. P. 80B(m) ("If the Superior Court remands the case for further proceedings, all issues raised on the Superior Court's review of the governmental action shall be preserved in a subsequent appeal taken from a final judgment entered on review of such governmental action.").

[¶ 18] Because the Planning Board's decision on remand from the Superior Court could render our decision on appeal meaningless, or could resolve the matter fully and thus obviate the need for any appeal, we must dismiss Nestlé's appeal and WMRRL's appeal as to the Town of Fryeburg action. Because we conclude that Nestlé's appeal is not ripe for our consideration, we no not address the substantive contentions of the parties regarding the decisions of the Planning Board and the Board of Appeals.

The entry is:

Judgment of the Superior Court affirming the Town of Denmark Board of Selectman's grant of an extraction permit to Nestlé Waters North America Inc. is affirmed. Nestlé's and Western Maine Residents for Rural Living's appeals of the Superior Court's judgment remanding to the Town of Fryeburg Planning Board the matter of Nestlé's application to construct a water loadout facility, pipeline, and silo are dismissed.