STATE OF MAINE                          SUPERIOR COURT
YORK, ss.                               DOCKET NO. AP-18-09
                                                    AP-18-10


DANIEL G. RAPOSA, JR.,                )
MICHAEL E. ARCHAMBAULT                 )
DEBORAH M. ARCHAMBAULT, and            )
MICHAEL S. KOFMAN                      )
                                       )
              Plaintiffs,              )
                                       )
        v.                             )
                                       )
THE INHABITANTS OF THE                 )
TOWN OF YORK,                          )
                                       )
              Defendant                )
                                       )
JOSHUA M. GAMMON d/b/a                 )
GAMMON LAWN CARE, and                  )
DIANE MARCURI,                         )
                                       )
              Parties-in-Interest.     )


Plaintiffs Daniel Raposa, Michael Archambault, Deborah Archambault, and Michael

Kofman bring these consolidated appeals against Defendant, The Inhabitants of the Town of

York ("Town" or "York") under Maine Rule of Civil Procedure 80B, challenging the decisions

of York's Planning Board and Board of Appeals ("BOA") with respect to lots owned by parties-

in-interest Joshua Gammon and Diane Marcuri.

I.   **Background**

In 2013, Peter Marcuri purchased Lot 60 of the Georgeana Colony Subdivision in York,

Maine, which was adjacent to the lot where Mr. Marcuri kept his residence and operated a

commercial excavation company. (R. 287-88.)

1

In 2014, Mr. Marcuri conveyed to Joshua Gammon a portion of Lot 60 and the commercial portion of his lot, located at 632 York Street, York, Maine, where Mr. Gammon began operating a landscaping business. (R. 288.) Mr. Marcuri retained a portion of Lot 60 and the residential portion of his lot, located at 650 York Street, where his successor in title, Diane Marcuri, now resides. (R. 187-192, 287-88.)

Joshua Gammon and Peter Marcuri submitted a joint application to the Planning Board seeking the Board's approval to (1) merge Lot 60 with Mr. Marcuri's lot, and (2) divide the newly-merged lot ("Lot 46-11") into a commercial lot at 632 York Street ("Lot 46-17A) and a residential lot at 650 York Street ("Lot 46-11"). (R. 64-65.) On December 8, 2016, the Planning Board granted the application with respect to the lot merger, with the condition precedent that: "A plan showing the removal of lot 60 from the Georgianna [sic] Colony Subdivision be registered with the York County Registry of deeds[,]" and denied the proposed lot division on the basis that the proposed commercial lot did not meet the lot area requirements under section 8.1.1.D of York's Zoning Ordinance. (R. 65.)

Mr. Gammon subsequently acquired the necessary land to bring the proposed 632 York Street commercial lot into compliance and, on September 22, 2017, he and Diane Marcuri submitted an application to revise the lot lines of the 632 and 650 York Street lots such that both lots would be conforming. (R. 60-63.) Gammon and Marcuri also submitted a revised "Mylar plan"[1] reflecting the merger of Lot 60 per the December 8, 2016 Planning Board decision. (R. 60, 69.)

At an October 12, 2017, meeting the Planning Board approved, by a 3-2 vote, the Gammon/Marcuri revised Mylar plan eliminating Lot 60 of the Georgeana Colony Subdivision.

---

[1] The term "Mylar plan" is land use jargon for a subdivision map.

2

(R. 111, 116.) The Planning Board declined to take public comment on the matter, (R. 292.) and did not read into the record any of the correspondence it had received from members of the public on the subject. The Planning Board approved the Mylar despite the fact that the Mylar was submitted beyond the thirty-day period prescribed by York Ordinance § 18-A.5-G after consultation with the Town attorney. (R. 190.)

The Planning Board further considered the Gammon/ Marcuri lot division application at its October 26, 2017 meeting, where it denied the proposed lot division by a 3-2 vote. (R. 183-85.) The Planning Board issued written findings of fact and conclusions of law regarding the Gammon/Marcuri application on November 30, 2017. (R. 187-192.)

On December 27, 2017, Gammon and Marcuri appealed the Planning Board's denial of the lot division to the BOA. (R. 194.) On December 29, 2017, Daniel Raposa, Joseph J. Jason, Jr., and Lillian M.S. Jason appealed the Planning Board's approval of the revised Mylar to the BOA. (R. 218, 234-38.) The BOA held a hearing on January 24, 2018, where it received evidence, heard public comment, and considered the parties' arguments. (R. 281-86, 335-93.) By a 5-0 vote, the BOA overturned the Planning Board's decision with respect to the lot division and affirmed the Planning Board's approval of the revised Mylar plan. (R. 284, 286.) The BOA issued written findings of fact on both appeals on February 28, 2018. (R. 287-91.)

The BOA concluded that the Planning Board properly exercised its discretion under the applicable ordinance to approve the late-submitted Mylar plan, and that the Planning Board's conditional approval of the lot merger in its December 8, 2016 decision eliminated the need to hold further public hearing in order to take further public comment on the matter. (R. 291.) The BOA further concluded that the proposed lot division satisfied the applicable lot size, road frontage, and shoreland frontage requirements. (R. 289.)

3

## II. Discussion

Plaintiffs challenge (1) the Planning Board's approval of the Mylar plan as affirmed by the BOA, and (2) the BOA's decision overturning the Planning Board's denial of the Gammon/Marcuri application for the lot division.

The Court's review of these governmental actions requires it to first determine whether the operative decisions on appeal are those of the Planning Board, as reflected in its November 30, 2017 decision, or those of the BOA, as reflected in its February 28, 2018 decisions.

### A. Operative Decision on Appeal

When sitting in its appellate capacity under Rule 80B, the Court directly reviews the operative decision of the municipality. *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 7, 868 A.2d 161. To determine whether the operative decision is that of a Planning Board or a Board of Appeals, the general rule prescribed by 30-A M.R.S. § 2691(3)(D) (2017) is that:

> unless a local ordinance limits the authority of the Board of Appeals to appellate review, the Board of Appeals is required by statute to undertake a de novo review, take evidence, make factual findings, and apply the applicable statutory and municipality provisions entirely independent from the decision of the Planning Board.

*Id.* ¶ 8; *see also Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7, 757 A.2d 773 ("unless [a] municipal ordinance explicitly directs otherwise, a Board [of Appeal] must conduct a hearing de novo.").

> By ordinance, York's BOA is authorized to:
> hear and decide Appeals from any order, requirement, decision, or determination made by any person or Board charged with the administration of this Ordinance. Additionally, the Board shall hear and decide appeals from any procedural error made by any person or Board charged with the administration of this ordinance, or by the failure of such person or Board to act.

York, Me., Zoning Ordinance, § 18.8.2.1 (Nov. 7, 2017). The BOA's procedures require it to issue a:

4

written order signed by the Chair and shall include all materials identified as the public record. The public record shall include: a transcript or tape recording of the testimony; the exhibits, together with all papers and requests filed in the proceeding; a statement of findings and conclusions, as well as the basis for these findings and conclusions, upon all the material issues of fact, law or discretion presented; and the appropriate order, relief or denial of relief. . . .

*Id.* § 18.8.3.4.

The Law Court has held that ordinances specifically override the de novo review provision of section 2691(3)(D) when they limit the BOA's authority to reverse a decision upon a finding that the lower body erred in its interpretation of the applicable ordinances or it decision was not supported by substantial record evidence. *See, e.g., Mills v. Town of Eliot*, 2008 ME 134, ¶ 15, 955 A.2d 258 ("'The [Board] shall hear and decide where an aggrieved person or party alleges error in any permit, . . . determination, or other action by the planning board or code enforcement officer,'" and that the "'[Board] may modify or reverse action of the planning board or code enforcement officer . . . only upon a finding that the decision is clearly contrary to specific provisions of this chapter.'"); *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 11, 868 A.2d 161 ("'The board may reverse the decision, or failure to act, of a town officer, board or commission only upon a finding that the decision, or failure to act, was clearly contrary to specific provisions of this ordinance or unsupported by substantial evidence in the record.'"); *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 12, 763 A.2d 1168 ("Southwest Harbor's Board of Appeals Ordinance provides that the ZBA may 'reverse the decision of the Code Enforcement Officer or Planning Board . . . only upon finding that the decision, or failure to act, was clearly contrary to specific provisions of the ordinance in question or unsupported by substantial evidence in the record.'")

5

On the other hand, when ordinances are unclear as to what capacity the board of appeals sits in, the general rule of section 2691(3)(D) applies. *See Stewart*, 2000 ME 157, ¶ 11 nn. 5-6, 757 A.2d 773.

Plaintiffs argue section 18.8.2.1 limits the BOA to acting in an appellate capacity while York and Gammon argue section 18.8.3.4 implies the procedure is to conduct a hearing de novo. Notably, the latter section mandates the BOA to take evidence in order to create a "public record" and to issue "findings." Thus, there is no "specific limitation [that] negates the *de novo* review provision of section 2691(3)(D)." *Gensheimer*, 2005 ME 22, ¶ 11, 868 A.2d 161. As such, the operative decisions for the purposes of this appeal are those of the BOA.

## B. Standard of Review

The Court reviews decisions of a municipal board challenged under Maine Rule of Civil Procedure 80B "'for error of law, abuse of discretion or findings not supported by substantial evidence in the record.'" *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024 (quoting *Yates*, 2001 ME 2, ¶ 10, 763 A.2d 1168). "The party seeking to overturn the decision bears the burden of persuasion." *Id.* (citing *Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 13, 760 A.2d 257).

"Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion. . . . The possibility of drawing two inconsistent conclusions from the evidence does not make the evidence insubstantial." *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368 (citation omitted). Interpretations of municipal ordinances are reviewed *de novo*. *Id.*; *Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245.

## C. Analysis

### 1. Mylar Plan Approval

6

Plaintiffs contend the BOA erred in its determination that the Planning Board did not err in approving the Mylar plan eliminating Lot 60 from the Georgeana Colony Subdivision map. They contend that the Planning Board's failure to open public comment or read correspondence into the record at its October 12, 2017 meeting constituted a deprivation of their constitutional rights to due process, that the decision to approve the subdivision plan was arbitrary and/or an abuse of discretion under the applicable zoning ordinance, and that the zoning ordinance's grant of discretion to the Planning Board to approve or dismiss the proposed plan without prejudice is void for vagueness.

Each argument implicates, to some degree, the Planning Board's procedures for conducting public hearings, issuing conditional approvals, and signing of applicants' late-submitted plans.

"The public hearing is the only time during the process where the public has a right to offer input during the application review process[,]" and at such hearing the Planning Board is required to open the floor for public comment and read letters and emails submitted in advance of the hearing into the record. York, Me., Zoning Ordinance, § 18-A.5.E.2 (May 20, 2017).

Following the public hearing stage of the application review process, the Planning Board issues its decision, such as a "conditional approval." *See id.* § 18-A.5.E.4.b. When "plans are to be signed by the board to indicate its approval," such as the Mylar plan here, "these plans shall be submitted by the applicant within 30 days of the relevant vote . . . and shall be signed by the board within 30 days of receipt[,]" otherwise "[t]he board may vote to deny without prejudice if the applicant fails to meet this submittal deadline." *Id.* § 18-A.5.G.

### i. Due Process

7

Plaintiffs contend they were entitled to a public hearing at the October 12, 2017 Planning Board meeting where the Board approved the Mylar plan Gammon and Marcuri submitted in accordance with the Planning Board's December 8, 2016 decision conditionally approving the elimination of Lot 60. They further contend the Planning Board erred by failing to read into the record emails it had received on the subject. The Town and Gammon rejoin that Plaintiffs are essentially seeking to re-litigate the Planning Board's December 8, 2016 decision to approve the elimination of Lot 60 conditioned upon the receipt and approval of the Mylar plan.

"In the context of municipal planning boards, . . . due process entitles a party 'to a fair and unbiased hearing.'" *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 17, 82 A.3d 148 (quoting *Lane Constr. Corp.*, 2008 ME 45, ¶ 29, 942 A.2d 1202). The parties do not dispute that, as persons opposed to the elimination of Lot 60, the appellants below had a due process right to be present and participate at a public hearing on the matter, and to exercise the right to appeal any action or inaction they contend violated their due process rights consistent with the procedures established by law.

The BOA concluded that the Planning Board's failure "to provide proper notice of the Nov[ember] 10, 2016 hearing is outside the timeliness limits of *this* appeal[,]" and that "[t]he Planning Board's decision to sign the Mylar was dispositive of whether there would be a requirement for an *additional* public hearing or to have written comments read into the record . . . . ." (R. 291) (emphasis added). The Court agrees with the BOA's interpretation of the applicable ordinances and does not perceive any deprivation of due process that occurred in the proceedings subject to this appeal.

The process established under section 18-A of York's Zoning Ordinance provides that the public hearing on an application held before the issuance of a decision, such as the grant of

8

conditional approval, is "the only time during the process where the public has a right to offer input during the application review process[,]" either in-person or through correspondence read into the record. *Id.* § 18-A.5.E.2. That public hearing was held on November 10, 2016. While Plaintiffs allege abutters were not given adequate notice of the November 10, 2016 Planning Board meeting where the conditional approval of the elimination of Lot 60 was granted, that was a separate governmental action that could have been pursued through a separate appeals process.

Accordingly, the BOA did not err in determining the Planning Board's actions at the October 12, 2017 meeting did not deprive Plaintiffs' constitutional right to due process.

### ii. Vagueness

Plaintiffs contend that section 18-A.5.G is void for vagueness[2] in that it does not prescribe any standards for the Planning Board, and in turn the BOA, to apply in determining whether to sign a late-submitted Mylar or deny the application without prejudice.

As Plaintiffs observe, an ordinance that is unconstitutionally vague for failure to set objective measures to guide its enforcement is invalid in its entirety, and therefore incapable of being enforced. *See Town of Baldwin v. Carter*, 2002 ME 52, ¶ 8, 794 A.2d 62. In the context of municipal zoning ordinances:

> The governing rule, constitutionally mandated, may be simply stated as that in delegating power to a[ municipal board], the legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the [board].

---

[2] Plaintiffs make an identical deadline with respect to section 18-A.5.E.4.b.2, which provides that a "conditional approval shall be valid for a period of 60 days from the date on which the vote was taken. If the applicant fails to satisfy all conditions precedent within this timeframe, the board may vote to deny without prejudice. Both of these standards shall be expressly stated in the findings of fact." Regardless of which ordinance section applies here, the operative language is identical and the parties agree the submission of the Mylar plan was tardy under either section18-A.5.E.4.b.2 or 18-A.5.G.

*Stucki v. Plavin*, 291 A.2d 508, 510 (Me. 1972); *accord Kosalka v. Town of Georgetown*, 2000 ME 106, ¶ 13, 752 A.2d 183.

Here, Ordinance section 18-A.5.G provides no set of objective standards to guide applicants or the Planning Board in circumstances where applicants submit Mylar plans to satisfy a conditional approval beyond the thirty-day window for their submission. Gammon and Marcuri had no way of knowing what they would have to show to get their late-submitted Mylar plan approved, rather than denied without prejudice. Likewise the Planning Board, and in turn the Board of Appeals, had no guidance in determining which option to select.

While the ordinance sections at issue may be vague, it does not necessarily follow—as Plaintiffs contend—that the Planning Board was required to deny the Gammon/Marcuri application with prejudice. Rather, if there was any unconstitutional vagueness of sections 18-A.5.G and 18-A.5.E.4.b.2 it would have rendered them entirely unenforceable, including their submission deadlines. Accordingly, the BOA would have committed no reversible error in determining that the Planning Board acted within its discretion in approving the late-submitted Mylar plan.

### 2. Lot Division

Plaintiffs next argue the BOA's action granting Gammon and Marcuri's appeal with respect to the division of the Marcuri lot into the 632 York Street commercial lot and the 650 York Street residential lot was arbitrary, capricious, and not supported by substantial evidence. Plaintiffs' arguments are based on various provisions of York's Zoning Ordinance and the Planning Board's Subdivision and Site Plan Regulations.

### i. Zoning Ordinance
#### a. Area and Frontage Requirements

10

The parties do not dispute that the Gammon and Marcuri lots fall within York's RES-4 and Shoreland Overlay Districts. Accordingly, the BOA must have supportably found that the proposed lots satisfied the applicable square footage, road frontage, and shore frontage requirements imposed by ordinance.

The area and frontage requirements applicable to the proposed Marcuri residential lot required a minimum lot size of 40,000 square feet, 200 feet of shore frontage, and 135 feet of street frontage. *See* York, Me. Zoning Ordinance §§ 5.2.1, 8.1.1.B. The dimensional ad frontage requirements applicable to the proposed Gammon commercial lot required a minimum lot size of 60,000 square feet, 300 feet of shore frontage, and 135 feet of street frontage. *See* York, Me. Zoning Ordinance §§ 5.2.1, 8.1.1.D.

The record before the BOA included the plans depicting the "Revised Division of Land" submitted by Mr. Gammon. (R. 131-32, 287.) The measurements indicated on these plans indicate the proposed Gammon and Marcuri lots satisfy area and frontage requirements.[3] The BOA was not presented with any reason to doubt the accuracy of the figures contained within the drawings. This alone constitutes substantial evidence that the Gammon and Marcuri lots satisfied the applicable area and frontage requirements.

### b. Expansion of Non-Conforming Use

The parties dispute whether approval of the proposed Gammon commercial lot was required under Zoning Ordinance provisions governing the expansion of non-conforming uses. A non-conforming use is defined as the:

> Use of property, land, or a structure that is not permitted or does not conform to the use limitations of Article 4, Use Regulations, in the base zoning district in which it is located,

---

[3] The Zoning Ordinance defines "road" and/or "street" to include "public or private ways[,]" and accordingly the BOA did not err in including the lots' frontage along the private right-of-way in its determination that the lots met the street frontage requirements. *See* York, Me. Zoning Ordinance § 2 ("Definitions"). Similarly, "shore frontage" is defined to include frontage along a "wetland" as calculated in the Revised Division of Land. *See id.*

11

or that is not permitted or does not conform to the use limitations of any overlay district in which it is located, but which was permitted at the time the use was established. . . .

York, Me. Zoning Ordinance § 2 ("Definitions"). Plaintiffs contend Planning Board approval of the lot division was required with respect to the Gammon commercial lot, a non-conforming use, because:

> A non-conforming use of land or a structure in which a non-conforming use occurs, may continue to exist and may expand within the lot boundaries, existing as of March 13, 1982 in the Route One base zones or existing as of November 7, 2006 in other base zones, provided the expanded use or structure meets the setback requirements, to the greatest extend practical as determined by the Planning Board, of the zone in which it is located. All such expansions must conform, to the greatest extend practical as determined by the Planning Board, to the applicable performance standards. Such expansion shall be permitted within an overlay district only if the expansion is in full conformance with the overlay district. All such expansions of a non-conforming use or structure are subject to review and approval by the Planning Board.

*Id.* § 17.1.6. The crux of Plaintiffs' argument is that the lot division and concomitant expansion of the boundaries of Gammon's commercial lot constitutes an expansion of the lot's non-conforming commercial use, and therefore the BOA's conclusion that the proposed division "d[id] not open the door to an analysis of the instant application in light of an expansion of a non-conforming use under § 17.1.6 . . . ." (R. 289) was in error.

Contrary to Plaintiffs' contention, Gammon's application to expand his lot lines in order to satisfy dimensional requirements under ordinance section 8.1.1.D did not constitute an "expansion" of a "non-conforming use" that implicated Planning Board review and approval under section 17.1.6. Rather, such review and approval would only have been implicated if Gammon proposed to expand the footprint or nature of his non-conforming commercial activities within the proposed lot. There is no evidence in the record to indicate Mr. Gammon sought any such expansion. Accordingly, the BOA did not err in its determination that review of the

12

Gammon/Marcuri application was not necessary under ordinance provisions regulating non-conforming uses.

## ii. Subdivision and Site Plan Regulations

Plaintiffs argue the BOA failed to apply various aspects of the Planning Board's Site Plan and Subdivision Regulations ("SPSR") and therefore erred in its approval of the Gammon/Marcuri lot division.

The threshold inquiry is whether the SPSR were even implicated by the Gammon/Marcuri lot division application. The parties do not dispute that all of the subject land was consolidated into a single lot by operation of law when it was owned by Peter Marcuri. *See* York, Me. Zoning Ordinance § 17.3.1.A.1. Additionally, "[n]o lot consolidated under this section shall be subdivided without approval of the Planning Board, and shall be subject to the regulations in effect at the time of the new application." *Id.* § 17.3.1.A.2. Based on the plain language of that subsection, the applicability of the SPSR depends on whether Gammon and Marcuri sought to "subdivide" the lot.

By statute, a "subdivision" is defined in pertinent part as "the division of a tract or parcel of land into 3 or more lots within any 5-year period . . . ." 30-A M.R.S. § 4401(4). Both York's Zoning Ordinance and the SPSR adopt the statutory definition of "subdivision." *See* York, Me. Zoning Ordinance § 2 (defining "subdivision" as "[t]he division of a tract or parcel of land into three or more lots, whether accomplished by sale, lease, development, building or otherwise, in any five year period as further defined by the Maine Subdivision Law (Title 30-A M.R.S.A. Section 4401)"); York, Me. Subdivision and Site Plan Regulations of the Planning Board of the Town of York § 3.1.21 (adopting statutory definition of "subdivision") (Jan. 12, 2012). Thus,

13

the term "subdivision" and its derivatives, such as "subdivide," is a term of art that refers to the division of a single lot or parcel into three or more lots within any five-year period.

The Gammon/Marcuri lot application was not a proposal for a subdivision because it only sought to create two lots. Therefore, the proposed lots were not subject to the requirements of the SPSR. *See* York, Me. Zoning Ordinance § 17.3.1.A.2 ("No lot consolidated under this section shall be *subdivided* without approval of the Planning Board, and shall be subject to the regulations in effect at the time of the new application.") (emphasis added); York, Me. Subdivision and Site Plan Regulations of the Planning Board of the Town of York § 2.2.2 ("The provisions in these Regulations shall pertain to all land within the boundaries of the Town of York *proposed for subdivision* as defined in these Regulations, Title 30-A M.R.S.A., Section 4401 and in the Town of York's Functional Subdivision Site Plan Review Ordinance.") (emphasis added).

Finally, Plaintiffs argue the SPSR are implicated because "[a]pplications submitted to the Planning Board shall be reviewed under the Site Plan and Subdivision Regulations. . . ." York, Me. Zoning Ordinance § 18.1.4.2. Plaintiffs take nothing from this argument because the provisions of section 18.1 expressly apply only to York's "Route One" zoning districts. The parties do not dispute that the Gammon and Marcuri lots are located in the RES-4 and Shoreland Overlay districts.

In conclusion, the SPSR were not applicable because Gammon and Marcuri only sought to divide a single, consolidated lot into two lots. Accordingly, the BOA did not err in its failure to apply certain provisions of the SPSR in granting the Gammon/Marcuri appeal and approving the proposed lot division.

## III.    Conclusion & Order

14

In light of the foregoing, Plaintiffs have failed to demonstrate that the BOA abused its discretion, committed legal error, or made findings that were not supported by substantial evidence in approval of either the late-submitted Mylar plan or the Gammon/Marcuri application for a lot division. Accordingly, the entry shall be:

"Plaintiffs' Rule 80B appeal challenging the approval of the Mylar plan is hereby DENIED. The BOA's decision is AFFIRMED."

"Plaintiffs' Rule 80B appeal challenging the approval of the lot division is hereby DENIED. The BOA's decision is AFFIRMED."

SO ORDERED.

Dated: December 3, 2018

_____
John O'Neil, Jr.
Justice, Superior Court

Entered on the Docket on: 12/3/18
Copies sent to the following parties/counsel on: 12/3/18

Attorney Quay    Attorney Howell
Attorney Statler   Attorney Costigan