## ESTATE OF Honora P. TINGLEY.

Supreme Judicial Court of Maine.

Submitted on Briefs April 29, 1992.

Decided July 14, 1992.

Charles O. Tingley, Jr., pro se.

William B. Devoe, Thad B. Zmistowski, Eaton, Peabody, Bradford & Vigue, P.A., Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Charles O. Tingley, Jr. appeals from an order of the Penobscot County Probate Court (*Woodcock, J.*) denying his post-judgment motion to set aside or otherwise reverse all previous orders entered by the court in the matter of the estate of his mother, Honora P. Tingley. Charles, the personal representative of his mother's estate, contends that because of a conflict of interest, Judge Woodcock was not impartial and that he should have recused himself from the matter. The record does not indicate that recusal was required. Even if recusal of Judge Woodcock had been appropriate, Tingley does not show that the outcome would have been different had the judge removed himself. Accordingly, we affirm the order denying the post-judgment motion.

Honora P. Tingley, mother of the appellant, died on July 31, 1988. In March 1989, Eastern Maine Medical Center (EMMC), a creditor of the estate, filed a petition for a formal adjudication of intestacy and appointment of a personal representative. In June 1989, Charles Tingley was appointed

personal representative of his mother's estate.

In July 1989, EMMC filed a claim against the estate for $14,560.81, representing the balance due on charges for hospital services rendered to Honora Tingley from November 1987 to March 1988. In January 1990, EMMC petitioned the Probate Court for allowance of its claim. Formal probate proceedings were begun and hearings were held on EMMC's petition for claim allowance. In June 1990, the Probate Court issued a judgment allowing EMMC's claim in full and ordered that the claim be paid from the assets of the estate. Tingley was ordered to prepare and file an inventory of property within thirty days. No appeal was taken from this judgment.

In September 1990, with the claim unpaid and no inventory filed, EMMC petitioned the court for an order of surcharge against Tingley in his individual capacity. After a hearing on the petition for surcharge, the court ordered that the personal representative pay within sixty days the full amount of EMMC's claim from the assets of the estate. The court further ordered that in the event that the personal representative should fail to make the required payment, Tingley was to be personally surcharged for the amount of the claim, plus interest.

Tingley did not request any findings of fact or conclusions of law, nor did he appeal from the Probate Court's order on the petition for surcharge. Though an inventory of property eventually was filed with the court, payment was not forthcoming. In July 1991, over seven months after the court's order on the petition for surcharge, EMMC sought to execute on its judgment.

In October 1991, Tingley, by letter to the court, for the first time raised the issue of conflict on the part of Judge Woodcock, requesting that the judge:

vacate, set aside, or otherwise reverse any and all previous orders pertaining to the above matters, because of your conflict of interest in the above matter because a relative of yours sits on the EMH (Eastern Medical Healthcare) and EMMC (Eastern Maine Medical Center) Boards.[1]

The record shows that John A. Woodcock, Jr., a nephew of Judge Woodcock, sits on the Board of Directors and is an officer of EMH (EMMC's parent organization) and is an officer and trustee of EMMC. Tingley asserts that he first became aware of this fact by reading a September 1991 news article stating Judge Woodcock had removed himself from a contested case involving EMMC because he had a relative on the EMH and EMMC boards. Counsel for EMMC in this case, by letters to the Probate Court, stated that he had a specific recollection that Judge Woodcock informed Tingley of his nephew's connection with EMMC at the time of the initial hearing. Tingley disputes this. The court, after hearing, denied Tingley's motion to vacate, set aside, or reverse all previous orders. No record, however, was made of the hearing.[2]

■■■■ We are unpersuaded by Tingley's contentions that Judge Woodcock should have disqualified himself from this matter and that all orders in the case should be set aside. Recusal is a matter within the broad discretion of the trial court, *Brendla v. Acheson*, 554 A.2d 798, 799 (Me.1989). Based on the record before us, we discern no abuse of the judge's discretion in declining to disqualify himself when requested to do so by Tingley after judgment.

■■■■ Moreover, we have carefully reviewed the record to determine if any of the decisions or orders of the court in this case appear to be tainted by judicial bias or prejudice. We find none. Indeed, Tingley

---

1. Though not captioned as such, it appears that Tingley's letter was meant to be a M.R.Civ.P. 60(b)(6) motion, and was treated as such. *See* M.R.Prob.P. 60(b) (incorporating M.R.Civ.P. 60(b)).

2. Tingley contends on appeal that at the hearing counsel for EMMC renounced his "specific rec-

ollection" of disclosure by the judge and that the judge himself stated that he did not recollect informing Tingley of his nephew's position. In the absence of a hearing transcript, we are unable to determine whether Judge Woodcock disclosed the relationship to the parties.

has not alleged that the outcome would have been any different had Judge Woodcock removed himself from the case. At issue in the instant matter is the allowance of EMMC's claim for hospital services rendered to the decedent; a claim that was liquidated, due, and owing. There was, at the time the court rendered its decisions, no dispute over whether the services were rendered or whether the charges were legitimate. The court was not called upon to exercise its discretion in making an award to EMMC to the exclusion of other claimants, but rather recognized a valid claim against the estate and ordered the estate to pay. After a hearing, when payments were not forthcoming, the court issued appropriate orders in response to motions by EMMC. Tingley's complaints of aggressive and perhaps insensitive behavior on the part of EMMC in the collection of the debt (which seems to be the real gravamen of his appeal) do not reflect on Judge Woodcock and do not demonstrate judicial bias. On this record, we decline to vacate and require EMMC to reinstate formal probate proceedings, with its expense in time and money, in order to collect the debt admittedly owed to it and which now has been paid.[3]

The entry is:

Judgment affirmed. Remanded to the Probate Court for calculation of the appropriate award of interest due from Tingley to EMMC.

All concurring.

---

**3.** We note from the record that in November 1991, shortly before the court's order denying Tingley's motion to vacate or recuse, Medicare funds in the full amount of the outstanding claim were released for payment to EMMC. The extent of Tingley's personal liability, then, should be limited to the interest on the unpaid claim from the date the Probate Court allowed the claim and ordered payment to the date EMMC was actually paid with Medicare funds.