STATE OF MAINE                          SUPERIOR COURT
HANCOCK, SS.                            CIVIL ACTION
                                        Docket No. AP-07-3


Ellsworth Commons, LP,
        Plaintiff


        v.                              Order on Appeal


City of Ellsworth, Maine,
        Defendant


        Pursuant to Article XVI of the City of Ellsworth Subdivision Ordinance

("Ordinance") and M.RCiv.P. 80B, Ellsworth Commons, LP appeals from a decision of

the City of Ellsworth Planning Board to deny a permit application associated with a

proposed apartment project. Ellsworth Commons argues here that the administrative

process was affected by procedural irregularities, including *ex parte* communications and

at least the appearance of a conflict involving several Board members, and that the Board

erred when it concluded that the project did not meet traffic standards created by the

Ordinance. For the reasons stated below, the court affirms the Board's decision.

        In September 2006, Ellsworth Commons filed a land development permit

application with the City's Planning Board. *See* R. vol. 5. The permit application

supported a project to develop a 7.3-acre parcel of land, which was undeveloped, and to

build a housing project consisting of three multi-unit buildings that would contain a total

of 29 apartment units. Under the Ordinance, the project was characterized as a major

subdivision and major conditional use. The Board conducted hearings and otherwise

considered the permit application at a series of meetings held between October 2006 and

February 2007. At the last of these meetings, held on February 7, 2007, the Board voted

3-2 to deny Ellsworth Commons' application for a major subdivision permit. *See* R. vol.

4. Subsequently, in a written notice issued in March 2007, the Board memorialized that

decision. *See* R. vol. 1, tab 1. The Board concluded that the subdivision proposal failed

to meet the Ordinance's criterion that such a development may not create unreasonable

1

congestion on the roads or unsafe traffic conditions and that the proposed subdivision did not conform to the City's comprehensive plan. The Board did not reach the conditional use aspect of the permit application.

From this decision, Ellsworth Commons filed a timely appeal to this court. In its complaint, it alleges that the Board's decision regarding the development's effects on traffic was not supported by the record evidence and that the decision of several of the Board members was affected by bias.[1] The court considers the latter issue first.

## A. Bias of Board members

Ellsworth Common first contends that it did not receive a fair hearing because three of the Board members (in fact, the three members who voted against issuing the permit to Ellsworth Commons) either harbored bias against it or engaged in *ex parte* communications with interested persons who opposed the development.

Ellsworth Commons has limited the factual predicate for this argument to the record on appeal. As part of an appeal from governmental action, allegations that a decision maker was biased also may be pursued by means of a trial of the facts pursuant to M.R.Civ.P. 80B(d). *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 240-41. Despite the availability of that procedural alternative, Ellsworth Commons has elected not to seek a trial of the facts. Consequently, an analysis of this bias claim is limited to the record on appeal. Thus, the resulting question is whether, as a matter of law, the record compels the conclusion that Board's proceeding was affected by bias. *Magnetic Resonance Technologies of Maine v. Comm'r, Maine Dept. of Human Servs.*, 652 A.2d 655, 659 (Me. 1995)

Ellsworth Commons alleges that the three Board members who, forming a majority, voted to deny issuance of the permit acted improperly as a result of bias. The court considers the claims against the three Board members separately.

### 1. Dwayne Patton

Ellsworth Commons first claims that Board member Dwayne Patton was biased and should not have participated in the administrative proceeding. Ellsworth Commons

---

[1] In its complaint, Ellsworth Commons included a third count for relief, based on an allegation that the Board failed to issue adequate findings of fact and conclusions of law. In its written argument on appeal, it has withdrawn that claim.

bases this argument on three factual contentions: that Patton lives in the area of the proposed development and therefore is personally exposed to economic effects of the project; that, because a number of resident who also live near the project site opposed the project, he must have opposed it too; and that he received *ex parte* communications from opponents of the plan.

Ellsworth Commons' overarching claim that Patton was biased must first be seen in the light of its express challenge to his participation in the permit review process. At the public hearing held on November 1, 2006, Ellsworth Commons' attorney raised the issue of whether Patton should be disqualified because he owns property near the development site and because other neighbors sent letters to him about the proposal. As an approach to address and resolve the issue, counsel agreed with the Board's attorney that Patton should express his own view of whether he believed he could act impartially and that the Board should then make an independent determination of that issue. *See* R. vol. 4, November 1, 2006, minutes at 7-11. Patton then stated on the record that he felt that he could be unbiased in his consideration of the pending permit application, that in the past he voted in favor of projects that he personally opposed and that he would abide by the Board's determination of the question of whether he should continue to participate in this matter. *Id.* at 11. After further consideration of the issue, the Board then voted 4-0 that Patton should not be disqualified. *See id.* at 13; R. vol. 1 at tab 1. This portion of the record thereby reveals, first, an express representation by Patton that he could fairly and impartially participate in the proceedings and, second, a separate determination by the remaining Board members to the same effect. This by itself is adequate to defeat Ellsworth Commons' claim here that the Board was compelled to reach a contrary conclusion.

Even beyond this, however, Ellsworth Commons' more specific factual arguments challenging Patton's continuing involvement in the proceedings are not sufficient to support its claim. The record reveals no basis to support a conclusion – much less an irresistible conclusion – that that Patton had a personal financial motivation to oppose Ellsworth Commons' permit application. Indeed, as is discussed below, at the November 1 meeting, another Board member, Deborah Hogan-Albert, volunteered that she owns property that abuts the proposed development site, and Ellsworth Commons did

3

not challenge her suitability as a participating Board member. This suggests that the existence of a financial interest of neighbors to the development location is not evident. And such a conclusion does not arise from the mere fact of geographical proximity. From this record, one cannot adopt Ellsworth Commons' conclusion with any more certainty than the other possibilities: that approval of the development would have had no effect on the value of Patton's nearby property, and that its approval would have enhanced its values.

Ellsworth Commons may be seen to argue that the Board, through one of its members, erred in suggesting that it (the Board) would benefit from participation of a member who had familiarity with the area near the proposed development site. *See* R., vol. 4 November 1, 2006, minutes at 13. In fact, this observation is correct: "[t]he law is well established that personal knowledge, when competent, may be considered by members of a planning board." *See Pine Tree Telephone and Telegraph Co. v. Town of Wells*, 631 A.2d 55, 57 (Me. 1993). Therefore, the mere fact that one or more of the Board members owned nearby property and knew about local traffic conditions did not require them to recuse from the proceedings or taint the eventual outcome. Rather, local Board members' familiarity with the local landscape is probably unavoidable in most cases and, in any event, is inherent in the process.

Ellsworth Commons goes on to ascribe bias to Patton based on the suggestion that because other neighboring property owners publicly opposed the project, Patton must have held the same opinion. This contention is not supported by the evidence, and it is belied by Patton's own direct assertion that he was willing and able to consider the permit application dispassionately.

Finally, Ellsworth Commons argues that "it is reasonable to suspect" that some of the project's opponents who lived in the area would have expressed their feeling toward him in *ex parte* communications. In fact, at the November 1 hearing, Patton confirmed that neighboring residents called him about the proposed development but that he directed them to participate in a public forum. *See* R. vol. 4, November 1, 2006, minutes at 12-13. Patton made this disclosure during that portion of the November 1 meeting when he stated that he could act impartially, and he made it prior to the Board's vote on the question of whether he should be permitted to participate in the permit application

4

proceedings. Nothing in this record establishes that these citizen contacts with Patton rendered him unable to act fairly and objectively, and the record does not give credence to the notion that he received other contacts in addition to the ones he did report.

Ellsworth Commons grounds its argument in part on the provisions of the provisions of 30-A M.R.S. § 2605(b). That statute renders municipal proceedings "voidable and actionable" based on the following obligation: "Every municipal. . .official shall attempt to avoid the appearance of a conflict of interest by disclosure or by abstention."[2] Here, Patton made the disclosures that form the basis for Ellsworth Commons' challenge to his subsequent participation in the Board's proceedings. Ellsworth Commons has not established, on this record, that Patton was required to recuse based on either common law principles of disqualification or section 2605. Finally, a review of the record does not establish that Patton acted in a way that revealed bias or prejudice. *Cf. Estate of Tingley*, 610 A.2d 266, 267-68 (Me. 1992) (discussion of claim of judicial bias). Although Ellsworth Commons points to Patton's comments that it contends were adverse to the merits of its permit application, they do not establish anything more than a Board member's participation in discussions about issues relevant to the Board's proceedings.

### 2. Deborah Hogan-Albert

While the issue of Patton's participation was being discussed, another Board member, Deborah Hogan-Albert, disclosed that she owns commercial property abutting the proposed development site. She further volunteered that she was capable of acting impartially and that she had not been approached by any of the occupants of the building. Similar to one part of its challenge to Patton's role in the municipal proceedings, Ellsworth Commons argues here that in substance or appearance, Hogan-Albert had a personal stake in the process, tainting the ultimate outcome denying its application. After Hogan-Albert disclosed her ownership of buildings in the area of the proposed project, the Board did not then directly address the propriety of her continuing involvement in the proceedings, and the court did not find any suggestion in the record that Ellsworth

---

[2] The court need not and does not reach the question of whether under section 2605, the mere appearance of a conflict of interest would be sufficient to vitiate municipal action, even in the absence of a showing that the apparent conflict had an actual effect on the outcome of the proceedings.

5

Commons sought her disqualification. If Ellsworth Commons did not challenge Hogan-Albert's involvement in the proceedings, then it has waived any such challenge on appeal.

Even if the issue is preserved, however, it is without merit for the same reason affecting Ellsworth Common's comparable argument regarding Patton: the evidence does not support any claim – much less one that is compelled by the record on appeal – that Hogan-Albert's ownership interest in nearby properties exposed her to financial consequences flowing from the Board's disposition of the permit application. Absent such a showing, Ellsworth Commons cannot demonstrate here that Hogan-Albert acted improperly by participating in the municipal process and that the Board's ultimate action on the application was compromised. Further, her disclosure satisfied any obligation created under section 2605.

### 3. John Fink

Also as part of the discussion regarding Patton's position in this matter, the Board's chair, John Fink, advised that he had received a number of letters regarding the proposed development. *See* R. vol. 4, November 1, 2006, minutes at 10. The letters themselves are included in the record on appeal. *See* R. vol. 1, tab 23. A number of those letters are virtually identical. Ellsworth Commons contends here that Fink was the object of *ex parte* communications that disqualified him from further participation in the municipal proceedings.

As with its arguments regarding Hogan-Albert, the court's review of the record did not reveal any objection by Ellsworth Commons to Fink's participation in the case subsequent to his disclosure that he had received the letters from interested citizens. If Ellsworth Commons failed to challenge Fink's involvement in the case after he disclosed receipt of the letters, then Ellsworth Commons has not preserved its argument on appeal.

Even if the issue remains cognizable, it does not entitle Ellsworth Commons to relief here. Fink properly disclosed his receipt of the letters and then produced them, to be made part of the record. Although the transcript of the relevant portion of the November 1 hearing contains reflects some inaudible passages, it appears that Fink reported that he also received some telephone calls but deflected the callers and ended the calls. *See* R. vol. 4, November 1, 2006, minutes at 10. None of these contacts required

Fink to recuse himself from further proceedings in this matter. A member of an executive board simply may find himself in a situation where he is contacted by a member of the public who holds an interest in a pending matter. There is no legitimate basis to argue that any such board member should be disqualified on that basis alone. Among other things, such a requirement would allow interested third persons to manipulate the municipal process by orchestrating the disqualification of a decision-maker simply through initiating extrinsic contact with him or her. Rather, an examination of the nature of the contacts that others had with Fink outside of the hearing forum cannot support an inevitable conclusion that Fink became biased. Therefore, the record does not establish that he was required to abstain from further proceedings in this matter. Beyond that, his disclosure of the outside contacts satisfied any applicable requirement created by section 2605.

### B. Denial of Ellsworth Common's permit application

The Planning Board ultimately denied Ellsworth Commons' application for a major subdivision permit because, as a majority of the Board's membership concluded, Ellsworth Commons has not established that the development met the municipal ordinance's standards for traffic safety and congestion. As it frames the issue in both the heading and text of its argument, Ellsworth Commons here contends that this finding was not supported by substantial evidence. Because, however, Ellsworth Commons bore the burden of proof at the administrative level and because the Board concluded that it had not satisfied that element of proof, Ellsworth Commons must demonstrate here that the administrative record compelled the Board to make a favorable finding on this aspect of the application. *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 18, 868 A.2d 161, 166.

In order to obtain the requested permit, Ellsworth Commons was required to establish that the development "[w]ill not cause unreasonable highway or public road congestions or unsafe conditions with respect to the use of the highways or public roads existing or proposed." Ordinance, art. I, § 1.5. In support of this aspect of its permit application, Ellsworth Commons submitted the analysis and conclusions of a professional engineer, Thomas Gorrill, who attempted to quantify the increase in traffic that the subdivision would generate. Additionally, the City of Ellsworth itself commissioned a

7

study, conducted by an engineering concern, to examine the adequacy of the existing road system, combined with proposed improvements to those roads, in the vicinity of the proposed development site. Finally, Ellsworth Commons points to the City's highway foreman's decision to waive certain roadway requirements because, he concluded, the improvements to the affected roads that would be implemented as part of the development project achieved the goals promoted by application of the ordinance's requirements themselves.

Evidence that Ellsworth Commons cites here as establishing that the project met the applicable roadway and traffic criteria was countered by evidence suggesting the opposite effect. This evidence submitted in opposition to the permit application largely had its source with neighborhood opponents. Ultimately, the Board found that the proposed development did not meet the roadway standards established in the ordinance. *See* R. vol. 1, tab 1. That finding referenced the conclusions offered by several Board members that Ellsworth Commons failed to establish that the roads would be safe for vehicular and pedestrian traffic. Ellsworth Commons must demonstrate here that the administrative record compelled the Board both to reject the opponents' position and to find that the project satisfied the ordinance's requirements applicable to road congestion and safety.

As Ellsworth Commons recognizes in its argument, however, a fact-finder is not bound by opinion or expert testimony, and it is free to reject such evidence in its entirety. *Cf. Kittery Electric Light Co. v. Assessors of Town of Kittery*, 219 A.2d 728, 743 (Me. 1966) (discussion of a jury's prerogatives). This by itself entitled the Board's members to discount the opinion evidence supporting Ellsworth Commons' permit application. Further, to the extent that the Board members relied on their own personal knowledge of existing traffic conditions, they did so properly. *See Pine Tree Telephone,* 631 A.2d at 57. This principle applies specifically to issues involving effects of a proposed development on traffic conditions. *Lippoth v. Zoning Bd. of App., City of So. Portland,* 311 A.2d 552, 57 (Me. 1973) (*cited in Pine Tree,* 631 A.2d at 57).

However, even if the Board was not entitled or authorized to reject Ellsworth Commons' contention that the project met the road standard unless the Board were presented with affirmative contrary evidence, the administrative record would be

8

sufficient to meet that test. The Board received information about local traffic conditions, offered by residents themselves. Some of them described existing problems, and particularly in conjunction with Ellsworth Commons' evidence about the projected effects of additional traffic, the Board was entitled to reach its own conclusions about the suitability of the development, based on the standards established in the ordinance. The Board was not compelled to adopt Ellsworth's Commons' position that the development would meet those standards.

The entry shall be:

For the foregoing reasons, the decision of the City of Ellsworth Planning Board is affirmed.

Dated: July 23, 2008

_____
Justice, Maine Superior Court

FILED &
ENTERED

JUL 2 8 2008

SUPERIOR COURT
HANCOCK COUNTY

9